**Paul and Sheryl PUMA, Appellants,**

v.

**Ann SULLIVAN, Appellee.**

**No. 97–CV–1479.**

District of Columbia Court of Appeals.

Submitted Dec. 10, 1998.

Decided Feb. 24, 2000.

---

Eric M. Rome, Washington, DC, filed a brief for appellants.

Susan L. Schor, Washington, DC, filed a brief for appellee.

Before FARRELL and RUIZ, Associate Judges, and MACK, Senior Judge.

MACK, Senior Judge:

On March 31, 1997, appellants Paul and Sheryl Puma brought a claim against appellee Ann Sullivan to recover Ms. Sullivan's share of a $15,000 promissory note

consummated with the Pumas by her then-husband Eric Ewoldt. Appellants contest the motions court's granting of appellee's motion for summary judgment. Appellants argue that the three-year statute of limitations does not preclude recovery of the loan because the note's original May 25, 1984 maturity date (and thus the date of the breach) was orally extended to June 8, 1996, by Ewoldt during his marriage to Ms. Sullivan. We reverse and remand for trial.

## I.

On November 25, 1983, Eric Ewoldt, who at the time was appellee Ann Sullivan's husband, borrowed $15,000 from appellants Paul and Sheryl Puma. On the same day, Ewoldt and the Pumas, who were personal friends, created a handwritten promissory note requiring the $15,000 principal be paid in six monthly installments at twelve percent interest, for a total of $15,600. According to the Pumas, Ewoldt requested the loan on behalf of himself and his wife, Ms. Sullivan, in order to purchase a marital home. Notably, the handwritten promissory note does not indicate the purpose of the loan, nor does Ms. Sullivan's name or signature appear on it. Shortly after taking the loan, Ewoldt and Ms. Sullivan purchased a home as tenants by the entirety in the Northwest section of Washington, D.C.

In an affidavit, Mr. Puma avers that after Ewoldt and Ms. Sullivan failed to make any of the agreed monthly payments, but before the May 25, 1984 maturity, Ewoldt indicated "that while he and Sullivan could not repay the loan, in no event would it be paid later than such time as the [jointly owned] house was sold or transferred." In addition, Mr. Puma's affidavit recounts Ewoldt's repeated reassurances of repayment made many times over the years, which allegedly deterred Mr. Puma from taking any collection action against Ewoldt or Ms. Sullivan.

According to the Pumas, Ewoldt continued to guaranty repayment for the next ten years. On January 5, 1994, Ewoldt and Ms. Sullivan entered into a divorce agreement. The divorce agreement stipulated that the sale of the marital home would be used to satisfy

> settlement costs including pay-offs of the existing Loyal F.S.B. first trust note, Bank of Baltimore home equity loan, [and] Puma loan (in an amount not to exceed $15,000), ... and the net proceeds, after payment of all proper expenses and reductions, shall be distributed in equal (50–50) shares to the parties.

Sometime after the divorce agreement was completed, the Pumas became aware of its existence and its reference to their loan. In addition, the Pumas contend that they continued to rely on Ewoldt's promise that they would be repaid by both himself and Ms. Sullivan when the house was transferred.

On June 8, 1996, Ms. Sullivan purchased Ewoldt's interest in their home. Shortly thereafter, the Pumas allege Ewoldt repaid them $7,500 from an escrow account established jointly with Ms. Sullivan. On December 28, 1996, the Pumas asked Ms. Sullivan to pay the remaining $7,500 of principal. After Ms. Sullivan refused, on March 31, 1997, the Pumas filed a complaint alleging breach of contract and unjust enrichment. In response to the Pumas' complaint, Ms. Sullivan moved to dismiss, or in the alternative, for summary judgment on the basis that the Pumas' claim was barred by the three-year statute of limitations.

◼ The motions court granted Ms. Sullivan's motion for summary judgment holding: (1) Ms. Sullivan was initially liable for the Pumas' note under D.C.Code § 30–201, which provides for spousal liability on a debt for "necessaries," such as the purchase of a home;[1] and (2) the Pumas'

---

1. In reviewing Ms. Sullivan's brief and her    motion for summary judgment, she seems to

claim was barred by the three-year statute of limitations, because Ewoldt's repayment of the $7,500 following divorce could not renew his ex-wife's obligation under the note. The Pumas appeal the motions court's granting of summary judgment.

## II.

■ Summary judgment "is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Willis v. Cheek,* 387 A.2d 716, 719 (D.C.1978) (citations omitted). In reviewing a trial court's order granting summary judgment, this court conducts an independent review of the record. *Burt v. First Am. Bank,* 490 A.2d 182, 184 (D.C. 1985). "If a movant has made a prima facie showing that there is no genuine issue of fact in dispute and it is clearly entitled to judgment as a matter of law, the opposing party may prevail only if he rebuts the showing with specific evidence." *Spellman v. American Sec. Bank, N.A.,* 504 A.2d 1119, 1122 (D.C.1986) (quoting *Wyman v. Roesner,* 439 A.2d 516, 519 (D.C.1981)). "[T]he evidence—consisting of the pleadings and other material in the record—must be construed in the light most favorable to the party opposing the motion." *Burt, supra,* 490 A.2d at 185 (citations omitted). All inferences which may be drawn from subsidiary facts must be resolved against the moving party. *Willis, supra,* 387 A.2d at 719 (citations omitted).

In making her prima facie case for summary judgment, Ms. Sullivan relies on the hand-written promissory note in support of her contention that the statute of limitations began to run on May 25, 1984, the loan's original express maturity date. Therefore, she contends, the three-year statute of limitations had long expired by the time the Pumas brought their claim in 1997.[2]

■ In rebutting Ms. Sullivan's prima facie case, the Pumas contend there exists a material factual dispute as to when the three-year statute of limitations began to run on their action to recover the loan amount. Specifically, the Pumas filed an affidavit asserting that prior to the original maturity date of May 25, 1984, Ewoldt orally offered to modify the note and extend the due date to such time as the house was sold or transferred, to which the Pumas agreed.[3] According to the Pumas, this conversation and agreement served to extend the note's due date such that the breach did not occur until June 8, 1996, the date the property was transferred to Ms. Sullivan. Consequently, the Pumas contend that their March 31, 1997 claim was filed within the three-year statute of limitations, thus rebutting Ms. Sullivan's prima facie case.

However, Ms. Sullivan disputes the admissibility of the statement made in the affidavit. Specifically, Ms. Sullivan argues that Mr. Puma's recitation of Ewoldt's out-of-court statement constitutes inadmissible hearsay, and thus cannot be considered on summary judgment. *See* Super. Ct. Civ.

concede that initially she was obligated by her then-husband's agreement with the Pumas. Whether conceded or not, as the motions court properly concluded, Ms. Sullivan was statutorily obligated by D.C.Code § 30–201, which provides that "both spouses shall be liable on any debt, contract or engagement entered into by either of them during their marriage for necessaries ." Therefore, the only remaining issue is whether the Pumas' action is barred by the three-year statute of limitations.

2. *See* D.C.Code § 12–301(7) (1995 Repl.).

3. It is not clear from Mr. Puma's affidavit who first offered to extend the due date and who accepted. However, this distinction holds no import to our determination. Also, it should be noted that this oral modification does not fall within the statute of frauds, because the statute is not applicable to oral modifications which are capable of being performed within one year. *Cooper v. Saunders–Hunt,* 365 A.2d 626, 629 (D.C.1976). Presumably, the Ewoldt–Sullivan home could have been sold or transferred within one year of the oral modification.

R. 56(e); *O'Donnell v. Associated Gen. Contractors of Am., Inc.*, 645 A.2d 1084, 1089 (D.C.1994) (explaining hearsay cannot be relied upon by one opposing summary judgment). The Pumas, on the other hand, argue that Ewoldt's out-of-court statements are admissible as an exception to hearsay.[4]

Certainly, the Pumas' evidence, *if admissible*, would create a genuine issue over significantly material facts. After all, the alleged oral modification surely would explain the timing of the Pumas' present action. *See Nickel v. Scott*, 59 A.2d 206, 207 (D.C.1948) (under contract law, it is well-settled that a written contract may be modified or rescinded by a subsequent oral agreement, even where the contract contains express language prohibiting oral modification); *Gagnon v. Wright*, 200 A.2d 196, 198 (D.C.1964) ("[A]greements may be modified by subsequent oral agreement, but the oral modification must be established by a preponderance of the evidence."). Moreover, Ms. Sullivan's subsequent divorce from Ewoldt cannot defeat the Pumas' modification theory, because it is based on statements made during the marriage.[5] Nevertheless, the issue remains as to whether Mr. Puma's recitation of Ewoldt's statements is admissible evidence or inadmissible hearsay.

4. In their brief, the Pumas argue that Ewoldt's statements are admissible as an exception to hearsay, namely party admissions. In making this argument, the Pumas attempt to fashion an "agency" relationship between Ewoldt and Ms. Sullivan from the statutory obligation mandated between husband and wife by D.C.Code § 30–201. However, we believe this obligation is more akin to privity than the principal-agent relationship required to invoke the party admission exception. In so far as this privity characterization holds, "authorization to speak in furtherance of the common enterprise, as in the case of agency, partnership, or conspiracy, can hardly be spelled out from the mere relationship of joint obligors, and admissibility of declarations on this basis has been criticized." McCORMICK ON EVIDENCE § 260, at 162 (5th ed.1999). Accordingly, courts generally have not admitted party admissions based solely on privity. *See,*

Ideally, Ewoldt himself would testify as to his alleged oral offer to modify the note, and be subject to cross-examination. However, because Ewoldt is unavailable to testify, the Pumas must rely on their recollection of Ewoldt's alleged statements.[6] Nevertheless, in reviewing the statement that Mr. Puma attributes to Ewoldt, we see that it is admissible non-hearsay.

■ " 'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." FED. R. EVID. 801(c). Although the Federal Rules of Evidence do not apply in the District of Columbia, "the definition of hearsay in Rule 801(c) is consistent with well-settled law in the District of Columbia and elsewhere." *Carter v. United States*, 614 A.2d 542, 545 n. 9 (D.C. 1992) (citing *Jenkins v. United States*, 415 A.2d 545, 547 (D.C.1980); *Morris v. United States*, 389 A.2d 1346, 1349–50 (D.C. 1978)). "From this definition it logically follows that if a statement is not offered to prove the truth of the matter asserted, it is not hearsay." *Id.* (citations omitted). For example, "proof of oral utterances by the parties in a contract suit constituting the offer and acceptance which brought the contract into being are not evidence of assertions offered testimonially but rather verbal conduct to which the law attaches

*e.g., Calhoun v. Baylor*, 646 F.2d 1158, 1162–63 (6th Cir.1981).

5. The D.C.Code does not address, and this court has yet to consider, whether the § 30–201 spousal obligation survives divorce. Here, because the alleged modification occurred during the marriage, we do not have cause to address this issue.

6. According to the Pumas' reply brief, Ewoldt is unavailable because he is outside the jurisdiction and cannot be compelled to testify against his former spouse pursuant to D.C.Code § 14–306 (1995). We note that this court has not addressed whether the privilege embodied in § 14–306(a) survives divorce. However, most courts view this privilege as ending on divorce. McCORMICK ON EVIDENCE, *supra* note 4, § 66, at 282.

duties and liabilities." MCCORMICK ON EVIDENCE, *supra* note 4, § 249, at 100. *See Hydrite Chem., Co. v. Calumet Lubricants Co.,* 47 F.3d 887, 892 (7th Cir.1995) ("[I]t is direct evidence, not hearsay, when a party to a dispute over a contract testifies to the offer or the acceptance made by the other contracting party."). *See, e.g., Taylor v. United States,* 603 A.2d 451, 461 (D.C. 1992) (holding that accusation that someone was a "snitch" was not hearsay because it was not offered for its truth, but to show that the accusation was in fact made), *cert. denied sub nom. Jones v. United States,* 506 U.S. 852, 113 S.Ct. 155, 121 L.Ed.2d 105 (1992).

 Mr. Puma's alleged hearsay statement, found in his affidavit, asserts that Ewoldt offered to modify the promissory note by extending its due date. Although the statement was made by an out-of-court declarant, it is not hearsay, because Ewoldt's offer is not an assertion; it is a verbal act. In other words, the offer is non-hearsay under the general definition, because it is not being used for the truth of the matter it asserts; it simply is being used to prove Ewoldt spoke the words of an offer. Accordingly, Mr. Puma's recitation of Ewoldt's out-of-court offer is admissible for consideration on summary judgment, and as mentioned raises a genuine issue of material fact.[7]

Therefore, Ewoldt's out-of-court statements are admissible and they raise a genuine issue of material fact regarding when the note became due, and thus when it was breached. Ms. Sullivan points to

the handwritten note as evidence that the note was breached when it matured on May 25, 1984. The Pumas recount the alleged oral offer by Ewoldt as evidence that the note would not mature until the sale or transfer of the house, which occurred on June 8, 1996. Thus, because there is admissible evidence on both sides of this materially factual dispute, summary judgment is improper.

*Reversed and remanded for trial.*

---

7. In addition to the alleged oral modification, Mr. Puma's affidavit also quotes Ewoldt's reassurances of indebtedness and continued recognition of the note's revised maturity date, made subsequent to the oral modification. Presumably, the Pumas offer these statements in support of the alleged oral modification. Ms. Sullivan argues that these statements are also inadmissible hearsay. However, because we find Mr. Puma's recitation of Ewoldt's offer admissible and sufficiently material to survive summary judgment, we need not consider the admissibility of these subsequent reassurances. However, we note the possibility that Ewoldt's reassurances of his indebtedness and continued recognition of the note's revised maturity date may be admissible as declarations against pecuniary interest. *See Gichner v. Antonio Troiano Tile & Marble Co.,* 133 U.S.App. D.C. 250, 254, 410 F.2d 238, 242 (1969) (noting that a statement is against pecuniary interest if it "entails possible civil liability"). *See also Laumer v. United States,* 409 A.2d 190, 199 (D.C.1979) (en banc) (establishing a three-step inquiry to determine the admissibility of a declaration against penal interest).