**Jody DERAMUS, Appellant**

v.

**DONOVAN, LEISURE, NEWTON & IRVINE, et al., Appellees.**

No. 00–CV–1679.

District of Columbia Court of Appeals.

Submitted July 31, 2003.

Decided July 27, 2006.

W.O. Dillard, Jackson. MS, of the Mississippi Bar, pro hac vice, and J. Christopher Ide, Alexandria, VA were on the brief for appellant.

Paul Terrence O'Grady was on the brief for appellee.

Before RUIZ, Associate Judge, and TERRY and SCHWELB, Senior Judges.*

TERRY, Senior Judge:

After the death of her husband Frank Deramus in 1991, appellant Jody Deramus filed suit in federal court against Jackson National Life Insurance Company ("Jackson National") for failing to disclose that her husband had tested positive for the human immunodeficiency virus ("HIV") during a medical examination administered through the company three years earlier.[1] Appellant retained a law firm, appellee Donovan, Leisure, Newton & Irvine ("Donovan"), to represent her in that lawsuit.[2]

After receiving an unfavorable decision in her federal case, and after taking Donovan's advice not to file suit against her husband's local physicians[3] for failing to detect the virus earlier, appellant noted an appeal to the Fifth Circuit and, soon thereafter, filed this legal malpractice action against Donovan in the District of Columbia. In the case against Donovan, only one of Mrs. Deramus' several claims made it to the jury, namely, her allegation that the firm engaged in malpractice by advising her to drop her suit in a Mississippi state court against her husband's local doctors. The jury returned a verdict in favor of Donovan, and Mrs. Deramus noted this appeal.

---

\* Judge Terry was an Associate Judge of the court at the time this case was submitted. His status changed to Senior Judge on February 1, 2006.

Judge Schwelb was an Associate Judge of the court at the time this case was submitted. His status changed to Senior Judge on June 24, 2006.

1. *See Doe v. Jackson Nat'l Life Insurance Co.*, 944 F.Supp. 488 (S.D.Miss.1995). This case was originally filed in the United States District Court for the Eastern District of Virginia, but was later removed to Mississippi.

2. The New York law partnership of Donovan, Leisure, Newton & Irvine had, at the beginning of this litigation, an office located in the District of Columbia, operating under the name of Donovan, Leisure, Rogovin, Huge & Schiller. The D.C. office's work on appellant's case gave rise to the filing of the complaint in this jurisdiction. *See* D.C.Code § 11–921 (2001). Since the inception of this case, the partnership has dissolved, and the former partners, too numerous to name here, became individual defendants (and appellees) in this case.

3. When we speak of "local" doctors or physicians in the course of this opinion, we are referring to physicians in Mississippi who treated Mr. Deramus in the period prior to October 1989. *See note 9, infra.*

Before this court Mrs. Deramus maintains that the trial court erred in failing to give the jury an instruction on the Mississippi statute of limitations, which the jury requested during its deliberations, and incorrectly granted summary judgment in favor of Donovan on two of her other claims. We reject all of her arguments and affirm the final judgment.

## I

As part of the application process for supplemental life insurance coverage from Jackson National, Frank and Jody Deramus underwent separate medical examinations in April 1988. The results of both examinations were forwarded to Jackson National's medical director, Dr. Lewis Stewart, Jr. Shortly thereafter, Mr. Deramus was notified that the additional coverage he sought had been denied for undisclosed medical reasons. Eighteen months after undergoing the examination, Mr. Deramus was hospitalized at the Johns Hopkins Medical Center in Baltimore, Maryland, where he was diagnosed as HIV-positive.[4] In June 1991 Mr. Deramus died as a result of complications related to HIV.[5]

Appellant subsequently hired Donovan to represent her in a suit alleging that Jackson National negligently failed to disclose to her husband that he was HIV-positive in 1988. The suit claimed generally that Jackson National had a fiduciary duty to Mr. Deramus to inform him of his medical condition. On September 29, 1995, the United States District Court for the Southern District of Mississippi granted summary judgment in favor of Jackson National, holding that the insurance company did not owe a duty to Mr. Deramus under Mississippi law.[6] Appellant took an appeal to the Fifth Circuit, but the District Court's decision was affirmed. *Deramus v. Jackson Nat'l Life Insurance Co.*, 92 F.3d 274 (5th Cir.1996).[7]

After the notice of appeal was filed, but before the case was briefed and argued in the Fifth Circuit, appellant dismissed Donovan as her counsel and filed this legal malpractice action against the firm in the Superior Court of the District of Columbia. In her amended complaint she alleged, *inter alia,* that Donovan was negligent when it (1) advised her to drop the wrongful death suit against her husband's local doctors; (2) failed to seek certification of the issues decided by the United States District Court in Mississippi to that state's Supreme Court; and (3) failed to include the testing laboratories and the insurance company's agent and physician among the parties allegedly liable for her husband's death. Appellant sought $16 million in compensatory and punitive damages.

Donovan in due course filed a detailed motion for partial summary judgment; responsive pleadings were filed, and a hearing was held on February 24, 2000. The next day, February 25, the trial court entered an order granting summary judg-

---

**4.** Mrs. Deramus, on the other hand, has never tested positive for HIV.

**5.** It appears that Mr. Deramus contracted the virus while coming to the aid of an accident victim.

**6.** Appellant claimed that she was entitled to judgment against the insurance company under theories of (1) confidentiality of their relationship; (2) a duty to protect life and limb; (3) a duty of good faith and fair dealing; and

(4) a duty to warn of foreseeable harm. The District Court, however, rejected each argument. *See Doe v. Jackson Nat'l Life Insurance Co.*, 944 F.Supp. at 490–497.

**7.** The Fifth Circuit affirmed the District Court's grant of summary judgment for Jackson National in a one-sentence order, to which it attached a copy of the District Court's memorandum opinion.

ment for Donovan on all claims except those concerning whether or not it had engaged in legal malpractice by advising Mrs. Deramus to dismiss her medical malpractice suit against the local physicians in the Mississippi state court. Appellant's motion for reconsideration of this order was denied on May 9, 2000, in a one-sentence order. A motion for "reconsideration and/or clarification" of the May 9 order was denied on October 11, 2000.[8]

■ Trial on this sole remaining issue began several months later. What occurred next was a trial within a trial, *i.e.*, a medical malpractice trial to determine whether Donovan was negligent when it advised appellant not to sue her husband's local doctors. It was first necessary to determine whether any medical malpractice had occurred, for if Mr. Deramus' local physicians were not negligent in failing to diagnose his HIV status, then no damage could have resulted from Donovan's advice not to sue them. Under Mississippi law, which was the operative law at the trial below, one cannot recover damages in a medical malpractice case simply because of a diminution in the chance of recovery. Rather, damages are allowed only when the failure of a physician to render the required level of care results in the loss of a reasonable probability of substantial improvement in the patient's condition. *See, e.g., Singleton v. Stegall*, 580 So.2d 1242,

1246 (Miss.1991); *Clayton v. Thompson*, 475 So.2d 439, 445 (Miss.1985). After considering the evidence, the jury found that Donovan was not negligent in advising appellant to refrain from suing her husband's local physicians. Judgment was entered for Donovan, and Mrs. Deramus noted this appeal.

II

Appellant argues that the trial court erred by refusing to instruct the jury on the applicable statute of limitations in Mississippi for a wrongful death action after the jury requested such information during its deliberations. She asserts that her right to a fair trial was compromised by the court's failure to give the jury this information. This argument is without merit.

In February 1992 appellant voluntarily dismissed, without prejudice, her wrongful death suit in Mississippi against her husband's local physicians.[9] She alleged in the instant case that she did so in reliance on the advice she received from attorneys at Donovan, who told her that she could refile the claim when her federal case against Jackson National was over. However, appellant never requested that her wrongful death complaint be refiled until after the applicable statute of limitations had expired; consequently, she was barred from refiling that complaint.[10] *See* MISS.

---

8. The May 9 order is in the record on appeal. The October 11 order is not, but a docket entry states that the court denied the motion for "reconsideration and/or clarification" on October 11.

9. Despite having been advised against doing so, appellant filed a *pro se* complaint on October 25, 1991, against several local physicians whom her husband had seen in the years prior to his HIV diagnosis by Johns Hopkins. That was the complaint she withdrew, still *pro se*, on February 19, 1992.

10. There is some dispute about when the statute of limitations actually expired on appellant's wrongful death claim. The Mississippi statute provides that an action in tort may be filed within two years after the physician's alleged act or omission resulting in injury or death "shall or with reasonable diligence might have been first known or discovered." MISS.CODE ANN. § 15–1–36(1) (2002). However, in *Gentry v. Wallace*, 606 So.2d 1117 (Miss.1992), the Mississippi Supreme Court held in a 5–to–4 decision that, notwithstanding the date of discovery, the statute of limitations on a wrongful death claim begins to run

CODE ANN. § 15–1–36(1) (2002) ("no claim in tort may be brought against a licensed physician ... for injuries or wrongful death arising out of the course of medical, surgical or other professional services unless it is filed within two (2) years from the date the alleged act, omission or neglect shall or with reasonable diligence might have been first known or discovered").

During deliberations, the jury sent a note to the trial judge asking what the statute of limitations was for a wrongful death case in Mississippi in October 1991. After a discussion with counsel for both parties, the judge ruled that the jurors would not be instructed on that point because they had heard conflicting expert testimony on that issue during trial; instead, they would be directed to rely only on what they remembered from the testimony about when the statute of limitations would expire. During the trial, one expert testified that the appropriate statute of limitations in this case would be measured from the date of Mr. Deramus' death. Another expert testified, on the other hand, that the applicable statute of limitations started to run "two years from the date of the incident or when the plaintiff knew or should have known, or reasonably knew, of the incident." Counsel for appellant never objected to the trial judge's failure to give an instruction on the statute of limitations.

■■■ "A trial court has broad discretion in fashioning appropriate jury instruc-

tions, and its refusal to grant a request for a particular instruction is not a ground for reversal if the court's charge, considered as a whole, fairly and accurately states the applicable law." *Psychiatric Institute of Washington v. Allen*, 509 A.2d 619, 625 (D.C.1986) (citations omitted). This court will reverse only for an abuse of that discretion. *E.g., Edwards v. United States*, 721 A.2d 938, 944 (D.C.1998); *Talley v. Varma*, 689 A.2d 547, 550 n. 1 (D.C.1997). Moreover, "[t]hose errors raised for the first time on appeal are not grounds for reversal unless 'it is apparent from the face of the record that a miscarriage of justice has occurred.'" *Mark Keshishian & Sons, Inc. v. Washington Square, Inc.*, 414 A.2d 834, 839–840 (D.C.1980) (citation omitted); *see Miller v. Avirom*, 127 U.S.App. D.C. 367, 369–370, 384 F.2d 319, 321–322 (1967) ("review will normally be confined to matters appropriately submitted for determination in the court of first resort").

■ The judge's failure to instruct the jury on this issue was not erroneous, nor did it prejudice appellant's right to a fair trial. The jury was confused about a subject that appellant's counsel acknowledged was irrelevant to the ultimate issue in the case, since the statute of limitations would have expired under either interpretation of the law before appellant sought to refile her case in state court against the local

"no earlier than" the date of death, *id.* at 1123, since there can be no cause of action for wrongful death until the patient actually dies. *Id.* at 1120 ("a claim sounding in wrongful death comes into being upon the death of the deceased").

Appellant contends that under *Gentry*, therefore, the statute did not begin to run until June 1991, when Mr. Deramus died. Donovan maintains, however, that before the *Gentry* case changed the applicable law, the two-year statute of limitations started to run upon discovery of the cause of the wrongful

death, *i.e.*, the date on which Mr. Deramus' HIV-positive diagnosis was made in October 1989. Thus, Donovan reasons, at the time its attorneys gave Mrs. Deramus the advice not to sue (February 1992, six months before the *Gentry* decision), the statute of limitations—as it was then understood—had already expired. We need not resolve this dispute because the actual date of expiration is of no legal consequence; under either theory, the statute of limitations had expired when appellant sought to refile her complaint in October 1995.

physicians.[11] The trial judge held extensive discussions with counsel for both parties before deciding what to tell the jury, ultimately deciding to allow the jurors to rely on their recollection of the testimony to answer their own question. In these circumstances, we are satisfied that the trial judge committed no error, let alone plain error,[12] in failing to instruct the jurors on an issue that was, at best, of borderline relevance to the issues being litigated.

### III

■ "Summary judgment is appropriate only when there are no material facts in issue and when it is clear that the moving party is entitled to judgment as a matter of law." *Puma v. Sullivan*, 746 A.2d 871, 874 (D.C.2000) (citations omitted); *see* Super. Ct. Civ. R. 56(c). "In reviewing a trial court order granting a summary judgment motion, we conduct an independent review of the record." *Tavakoli–Nouri v. Gunther*, 745 A.2d 939, 941 (D.C.2000) (citation omitted). However, although we must view the record in the light most favorable to the non-moving party, *Deutsch v. Barsky*, 795 A.2d 669, 674 (D.C.2002), mere conclusory allegations by the non-moving party are insufficient to avoid entry of summary judgment.

*See Musa v. Continental Insurance Co.*, 644 A.2d 999, 1002 (D.C.1994).

Appellant contends that the trial court erred in granting summary judgment against her on two issues. First, she claims error in the court's conclusion that Donovan was not negligent when it failed to sue the insurance agent, the insurance company's physician, and the testing laboratory in connection with her husband's death. Second, appellant maintains that the trial court erred in granting summary judgment on the issue of certification of the District Court decision to the Mississippi Supreme Court. We shall consider each argument in turn.

### A. Failure to Sue Additional Defendants

■ Appellant argues that Donovan failed to include all potentially liable defendants in her suit against Jackson National. She claims that several parties could have been sued either under MISS.CODE ANN. § 83–17–1 (1972),[13] which (she maintains) imposed liability on agents in insurance matters who had knowledge of information also possessed by their principal, or under the 1985 Rules and Regulations Governing Reportable Diseases of the Mississippi State Department of Health ("Mississippi Health Rules"), which (she contends) imposed a duty to report to state officials the results of tests for communicable dis-

11. Counsel for appellant also stated, when asked a second time about whether or not the jurors should be told about the statute of limitations, that they "should not be told anything other than what [they had] already been told," referring to the expert testimony.

12. Because appellant failed to object below, we review her present claim only for plain error. *See United States v. Olano*, 507 U.S. 725, 736–737, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993) (defining plain error).

13. MISS.CODE ANN. § 83–17–1 (1972) provided, in part:

Every person ... who takes or transmits ... an application for insurance or a policy of insurance ... or who shall examine or inspect any risk ... or perform any other act or thing in the making or consummation of any contract of insurance ... shall be held to be the agent of the company for which the act is done....

This section, which was in effect at all times pertinent to this case, was completely rewritten in 2001. The current version, which took effect on January 1, 2002, can be found in MISS.CODE ANN. § 83–17–1 (2003).

eases.[14] She concludes that, in light of these statutes and regulations, the insurance agent who accepted the Deramuses' application for additional life insurance, the company whose employees drew her husband's blood, the laboratory which later tested it, and the insurance company's physician who knew of the results should have been joined as parties in her suit against Jackson National.

The insurance agent who handled appellant's application for insurance, Oscar Arinder, cannot be held liable under the agency theory advanced by appellant under MISS.CODE ANN. § 83–17–1. In the first place, there is no evidence in the record before us indicating that he had any knowledge of Mr. Deramus' infection. *See Doe v. Jackson Nat'l Life Insurance Co.,* 944 F.Supp. at 490 (stating that Arinder asked Jackson National about "the specific results of [Mr. Deramus'] medical examination ... but was unable to obtain the information"). Furthermore, even assuming that Jackson National's knowledge of those test results might be attributed to its agent, Mr. Arinder (a dubious proposition, legally and factually, on this record), the United States District Court held that Jackson National, as the principal, had no legal duty to inform Mr. Deramus of those results. *Id.* at 496–497. The District Court's ruling on that point, later affirmed by the Fifth Circuit, is not subject to review by this court. Appellant's argument that an agent owes a duty when the principal does not is contrary to well-settled principles of agency law. *See, e.g., PYCA Industries, Inc. v. Harrison County Waste Water Management District,* 177 F.3d 351, 378 (5th Cir.1999); *Wood v. State,* 245 Miss. 103, 146 So.2d 546, 551 (1962). Thus, absent extraordinary circumstances not present here, Mr. Arinder would not be liable to appellant as an agent of Jackson National because Jackson National owed Mr. Deramus no duty of disclosure.

The same can be said about Dr. Lewis Stewart, Jr., the physician at Jackson National who received the test results from the laboratory. While he certainly had knowledge of what the laboratory found, Jackson National, as his principal, did not have a duty to disclose those results to either Mr. or Mrs. Deramus. *Doe v. Jackson Nat'l Life Insurance Co.,* 944 F.Supp. at 496–497. Dr. Stewart, like Mr. Arinder, could not legally owe a duty as an agent when his principal owed no such duty. *See PYCA Industries,* 177 F.3d at 379; *Wood,* 146 So.2d at 551.

Appellant also argues that Donovan should have sued the facility that drew her husband's blood, Examination Management Services ("EMS"). However, there is no evidence in the record that EMS ever had knowledge of Mr. Deramus' test results, which under appellant's reasoning might trigger a potential duty to inform.[15] On the contrary, EMS was responsible only for drawing Mr. Deramus' blood sample and forwarding it to the laboratory for testing. There has been no showing that EMS or any of its employees ever knew, or even saw, the subsequent test results. In addition, testimony by Mrs. Deramus shows that she did not

---

**14.** Section I of the Mississippi Health Rules provides:

Each physician ... as well as the superintendent, administrator or other person in charge of any hospital, *institution,* school or day care center shall report to the State Department of Health any case or suspected case of communicable or reportable disease, including those hereinafter listed, which he is attending, has examined, or of which he has knowledge. [Emphasis added.]

**15.** This assumes, of course, that EMS can be regarded as a temporary agent of Jackson National, an issue which we need not decide.

know whether EMS was aware of her husband's test results,[16] and counsel for appellant admitted to the trial judge that "we don't know as a matter of certainty" whether EMS knew what the results were. Moreover, even if it could be shown that EMS—as Jackson National's assumed temporary agent—knew about the test results, the law does not impose liability on an agent if the principal is not liable, absent extraordinary circumstances. Accordingly, no possible theory of liability could justify naming EMS as a defendant in the suit against Jackson National.[17]

 Appellant further contends that the laboratory that performed the tests should have been named as a defendant because, under the Mississippi Health Rules, those conducting tests for certain communicable diseases have a duty to report the results to the State Department of Health. We assume *arguendo* that if the test had been performed in Mississippi, the laboratory would have had to turn the results over to state officials. However, no such duty arose here because Mr. Deramus' tests were performed by the Home Office Research Laboratory, which is located in Kansas, beyond the reach of the Mississippi Health Rules.[18]

Because each of the parties identified by appellant would not have been liable under any of the legal theories that she asserts, the trial court's grant of summary judgment on these claims was correct.[19]

B. *Failure to Seek Certification*

 Finally, appellant maintains that the trial court erred in granting summary judgment against her on her claim that Donovan was negligent in failing to seek certification of the decision by the United States District Court to the Supreme Court of Mississippi. When appellant dismissed Donovan as her counsel before it even filed a brief in her Fifth Circuit case, she cut off any opportunity for Donovan to seek certification on any issue. Further, the Mississippi Health Code provision which articulates a duty to inform the State Department of Health of certain test results was never even discussed in the District Court opinion. As the trial judge in this case pointed out in his order granting partial summary judgment, "the health code apparently was not brought to the attention of the District Court." Thus it would have been impossible for Donovan to certify any issue involving the health code to the Supreme Court of Mississippi.

---

16. When asked during her deposition if she knew whether EMS was aware of her husband's test results, Mrs. Deramus responded, "I don't know."

17. The only document suggesting that EMS even knew Mr. Deramus was being tested for HIV was a transmittal sheet showing that EMS sent the blood to the laboratory for tests related to the virus. There is no evidence that anyone at EMS ever had any knowledge of the test results.

18. Section V of the Mississippi Health Rules provides:
It shall be the duty of the director ... of any clinical laboratory *in the State of Mississippi* to notify the Mississippi State Department of Health, Jackson, by forwarding within 24 hours a copy of any laboratory report which is considered diagnostic of or indicative of the diagnosis of a reportable disease.... [Emphasis added.]
This regulation does not purport to apply to any laboratory outside the borders of the State of Mississippi.

19. We therefore need not decide whether Mrs. Deramus, either in her own right or as the personal representative of her husband's estate, would have standing to sue EMS for any alleged breach of its duty under the Mississippi Health Rules to report any matter *to the State Department of Health*. That would be, in any event, a question of Mississippi state law.

It has long been settled that a federal court applies the substantive law of the forum in which it sits. Whenever there is any doubt as to its application of state law, a federal court can certify questions to the state supreme court to avoid making unnecessary guesses as to how the applicable law should be interpreted, provided that such certification is available under state law. The state supreme court then has an opportunity to interpret or change existing law in a written opinion. *See generally Continental Casualty Co. v. Adamo*, 326 F.3d 1181, 1182 (11th Cir. 2003).

Rule 20 of the Mississippi Rules of Appellate Procedure deals with matters of certification.[20] Under that rule, a federal appellate court, in this instance the Fifth Circuit, may certify a question of state law to the Mississippi Supreme Court, either *sua sponte* or, when the federal court approves, on motion of any interested party. *See* Miss. R.App. P. 20(b).

Appellant argues that Donovan was negligent in failing to seek certification of the District Court's decision to the Fifth Circuit. After the District Court issued its opinion in September 1995, however, appellant dismissed Donovan as her counsel on December 20, 1995, and as a consequence Donovan never even filed an appellate brief (although it was allegedly preparing one when its services were terminated). Appellant was represented in the Fifth Circuit by other attorneys. The Fifth Circuit then affirmed the District Court's decision on August 7, 1996. *Dera-*

*mus v. Jackson Nat'l Life Insurance Co., supra.* To suggest that Donovan was negligent in failing to seek certification of any issues for a client whom it no longer represented is inherently illogical. As Donovan states in its brief before this court, its dismissal as appellant's counsel "prohibited it from acting." We hold, accordingly, that Donovan could not have been negligent in failing to seek certification because, by the time that certification might have been a possibility, Donovan was out of the case. The trial court committed no error in granting summary judgment for Donovan on this point.

Appellant's separate argument that Donovan's failure to seek certification of the Mississippi Health Code issue also constituted malpractice is unavailing for yet another reason. As the trial court noted in its order, the issue involving the health code was never argued before the federal court in Mississippi; consequently, there was no possibility that it could be certified. As Mississippi Rule 20 clearly states, the only matters that can be certified are "questions or propositions of law ... which are determinative of all or part of that cause and there are no clear controlling precedents...." Since the health code claim was not considered or decided by the District Court, it could not legally have been certified by the Fifth Circuit, and any failure to seek certification could not have been negligent.

Buried within appellant's argument on this issue is a related but separate claim that Donovan was negligent in failing to

---

**20.** Rule 20(a) states, in relevant part:

When it shall appear to ... any United States Court of Appeals that there may be involved in any proceeding before it questions or propositions of law of this state which are determinative of all or part of that cause and there are no clear controlling precedents in the decisions of the Mississippi Supreme Court, the federal court may certify such

questions or propositions of law of this state to the Mississippi Supreme Court for rendition of a written opinion concerning such questions or propositions of Mississippi law. The Supreme Court may, in its discretion, decline to answer the questions certified to it. A similar certification procedure exists in the District of Columbia. *See* D.C.Code § 11–723 (2001); D.C. Ct.App. Rule 22.

raise the health code issue before the United States District Court in Mississippi. The premise of this argument is that the Mississippi Health Rules—specifically, Section I of those rules, *supra* note 14—imposed on Jackson National a duty to report Mr. Deramus' HIV-positive status to the State Department of Health. At the hearing held by the trial court on February 24, 2000, this point was vigorously argued by both parties. Appellant took the position that Section I of the Health Rules applied to Jackson National because it was an "institution." After extended discussion, however, the court ruled that the term "institution," read in context, was not broad enough to include an insurance company, and therefore that Section I imposed no duty of reporting on Jackson National. The court found support for its ruling in Section VII of the Health Rules, which imposes a duty to report information about communicable diseases on "persons in charge of certain businesses or institutions." From this language the court concluded that an "institution" was different from a "business," and that an insurance company such as Jackson National was a business, not an institution.

On February 25, the day after the hearing, the court issued an order summarizing its rulings at the hearing on February 24. In pertinent part, that order stated:

This Order reduces to writing rulings made at the hearing on February 24, 2000. . . .

It is ORDERED as follows:

1. Defendants are GRANTED partial summary judgment on so much of plaintiff's claim that defendants were negligent in not arguing before the United States District Court that the Mississippi Health Code imposed a duty on

Jackson National Life to disclose to Mr. Deramus its knowledge that blood tests were positive for the HIV virus[.]

In her motion for reconsideration of this ruling,[21] appellant argued, in part, that the court had misconstrued Section I when it held that Jackson National was not an "institution" and that it therefore had no duty under the Mississippi Health Rules to report Mr. Deramus' test results to the State Department of Health. The court denied the motion for reconsideration in a brief order issued on May 9, 2000. Appellant filed a motion for reconsideration of the May 9 order, but it focused mainly on the agency issues which we have discussed in part III–A of this opinion; it said nothing about the court's interpretation of Section I of the Mississippi Health Rules. This second motion for reconsideration was denied on October 11; see note 8, *supra.*

Appellant has made several arguments in support of her various claims of error, but, as Donovan points out in its surreply brief, she has not challenged on this appeal the trial court's interpretation of Section I of the Mississippi Health Rules. Construing the language of Section I, the court held that it imposed on Jackson National no duty to report anything, and that Jackson National was therefore, in the words of Donovan's surreply brief, "outside the application of the Mississippi Health Code." Appellant vigorously argues that Donovan was negligent in failing to seek certification of the health code issue to the Mississippi Supreme Court, but in making that argument, appellant assumes that Jackson National (and presumably its agents) had a duty under the health code to report Mr. Deramus' test results to the state. No-

---

**21.** The motion was captioned, "Plaintiff's Motion Seeking Reconsideration of Paragraph 1 of this Court's Order of February 25, 2000."

where in her brief does appellant contest the trial court's construction of the Health Rules—specifically, Section I—as excluding Jackson National from their coverage, even though this point was vigorously argued below.

The inexorable result of appellant's failure to challenge on appeal the trial court's ruling on the meaning of Section I is that we must deem the point abandoned under *Bardoff v. United States,* 628 A.2d 86, 90 n. 8 (D.C.1993), and similar cases.[22] It follows that the trial court's interpretation of Section I is conclusive for the purposes of this appeal, and that Section I means exactly what the trial court says it means. Accepting as we must the trial court's ruling that Section I imposed no duty of reporting on Jackson National, we conclude accordingly that Donovan could not have been negligent in failing to raise the health code issue in the United States District Court because, again as Donovan states in its surreply brief, "no harm [was] caused by the alleged failure."

For all of these reasons, we hold that the trial court committed no error in disposing of the certification claim on summary judgment.

## IV

The trial court's refusal to instruct the jury on the statute of limitations was a proper exercise of discretion, and its rejection of appellant's other claims on summary judgment is fully supported by the record. The judgment is therefore

*Affirmed.*

---

22. *E.g., Lopez v. United States,* 863 A.2d 852, 854 n. 5 (D.C.2004); *Beaner v. United States,* 845 A.2d 525, 534 n. 8 (D.C.2004); *Wagner v. Georgetown University Medical Center,* 768 A.2d 546, 554 n. 9 (D.C.2001); *Baxter v. United States,* 640 A.2d 714, 718 n. 9 (D.C.1994); *Cratty v. United States,* 82 U.S.App. D.C. 236, 243, 163 F.2d 844, 851 (1947) ("Since none of these points was urged in the brief, we treat them as abandoned").