Kelvin L. MARTIN, Appellant,

v.

UNITED STATES, Appellee.

No. 05–CF–1352.

District of Columbia Court of Appeals.

Argued March 19, 2009.

Decided April 1, 2010.

Corinne Beckwith, Public Defender Service, with whom James Klein and Jaclyn S. Frankfurt, Public Defender Service, were on the briefs, for appellant.

Chrisellen Kolb, Assistant United States Attorney, with whom Jeffrey A. Taylor, United States Attorney at the time, Roy W. McLeese III, Timothy G. Lynch, and Ann K.H. Simon, Assistant United States Attorneys, were on the brief, for appellee.

Before REID, GLICKMAN and OBERLY, Associate Judges.

GLICKMAN, Associate Judge:

Appealing his conviction for assaulting a police officer, appellant Kelvin Martin claims the trial court violated his Sixth Amendment right to counsel by ordering him not to speak to his attorney about his testimony over a weekend recess that interrupted his cross-examination. We agree with appellant that this was plain error necessitating reversal.

## I.

Appellant was indicted and tried on one count of aggravated assault while armed and one count of assaulting, resisting or interfering with a police officer with a dangerous weapon. The charges arose when Officer Ross Dykman of the United States Park Police attempted to stop the vehicle appellant was driving, a Chevrolet Suburban, on the afternoon of August 23, 2004. Officer Dykman testified at trial that he approached the Suburban, which was halted in traffic, because he saw the front-seat passenger drinking from a bottle in a paper bag. Dykman suspected that the bag concealed an open container of alcohol. According to Dykman, he identified himself as a police officer and asked appellant for his driver's license and registration, which appellant made a show of looking for but was unable to provide. Dykman then instructed appellant to pull over to the curb when traffic cleared and told the passenger to hand over the paper bag. When the passenger, appellant's former co-defendant Robert Hawkins, re-fused to surrender the bag, Dykman reached into the vehicle to retrieve it.

At that point, Dykman testified, the encounter turned violent. Hawkins grabbed Dykman's wrist and yelled "Go!" The Suburban took off. It careened through the streets for several blocks, dragging Dykman along with it and, at one point, nearly crushing him against a parked van. As the wild ride continued, Dykman managed with his free hand to withdraw his service revolver from its holster. Hawkins grabbed the gun and tried to wrench it away from Dykman. Dykman fired several shots, missing appellant but hitting Hawkins, and then fell from the speeding vehicle onto the roadway. The Suburban was followed by a civilian witness who alerted the police, and its occupants soon were apprehended.

In their defense, appellant and Hawkins testified they thought Dykman was a carjacker, not a policeman. As they described the confrontation, they were stopped in traffic when a man holding a black gun appeared without warning on the passenger side of the vehicle. The man did not identify himself as a police officer and neither appellant nor Hawkins recognized that he was one.[1] As traffic began to move, the unknown gunman pointed his weapon at appellant and said, "If you pull off, I'm going to shoot you." Appellant, bewildered and "scared to death," pulled off in a panic. The gunman held on to the side of the moving Suburban as Hawkins tussled with him for his gun and appellant ducked and drove erratically to avoid being shot. The encounter ended when the gunman released his grip on the door of the car after shooting Hawkins.

---

1. Dykman was wearing a "Class A" Park Police uniform consisting of a plain, light blue, short-sleeved shirt and dark trousers. He had a badge and name plate on his chest, a Park Police patch on his left shoulder, and police equipment on his belt. Whether appellant could see that Dykman was in uniform from his somewhat elevated vantage point in the driver's seat of the Suburban was a contested issue at trial. Appellant testified that his view was obstructed by Hawkins's body.

## II.

 Appellant took the stand at trial on a Friday afternoon. His direct examination was completed and the prosecutor began his cross-examination. At 4:45 p.m., the trial judge interrupted the cross-examination to adjourn the trial until Monday morning and to excuse the jury. The prosecutor then requested "an instruction that the witness who is being cross-examined should not talk about his testimony with counsel." Without asking for a response to that request from appellant, the trial judge responded, "Sure, that you'll follow that instruction. Mr. Martin, you're directed not to speak to anyone pending the examination on Monday at 10:30. Do you understand?" Appellant answered, "Yes, sir." Appellant's trial counsel stood mute during this exchange and did not object to, or seek relief from, the order.

In this court, appellant argues that the sequestration order violated his Sixth Amendment right to the assistance of counsel recognized by the Supreme Court in *Geders v. United States*[2] and *Perry v. Leeke*,[3] and that the order constituted plain error requiring reversal under this Court's en banc decision in *Jackson v. United States*.[4] Appellant is correct on both counts.

*Geders* and *Perry* hold that an order prohibiting a defendant from conferring with his counsel during an overnight (or other significant) interruption of his testimony is a denial of the defendant's Sixth Amendment right to counsel that requires reversal without any showing of prejudice.[5] In such a long recess, the Supreme Court explained in *Perry*, the defendant has a "right to unrestricted access to his lawyer for advice on a variety of trial-related matters" even though the consultation "will inevitably include some consideration of the defendant's ongoing testimony." [6] The goal of preventing improper influence or witness "coaching," which suffices to justify lengthy sequestration orders directed at ordinary witnesses,[7] must be pursued by other means when the witness is the defendant in a criminal trial.[8]

Applying *Geders* in *Jackson*, this Court held that an unconstitutional prohibition on a testifying defendant's communication with his attorney during a recess is reversible error "regardless of whether prejudice was demonstrated, and despite [the defendant's] failure to remonstrate against the

---

**2.** 425 U.S. 80, 96 S.Ct. 1330, 47 L.Ed.2d 592 (1976).

**3.** 488 U.S. 272, 109 S.Ct. 594, 102 L.Ed.2d 624 (1989).

**4.** 420 A.2d 1202 (D.C.1979) (en banc).

**5.** *Geders*, 425 U.S. at 91, 96 S.Ct. 1330; *Perry*, 488 U.S. at 278–80, 109 S.Ct. 594. "Actual or constructive denial of the assistance of counsel altogether is not subject to the kind of prejudice analysis that is appropriate in determining whether the quality of a lawyer's performance itself has been constitutionally ineffective." *Id.* at 280, 109 S.Ct. 594 (internal quotation marks, citation and brackets omitted). *See also, e.g., Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) ("We have spared the defendant the need of showing probable effect upon the

outcome, and have simply presumed such effect, where assistance of counsel has been denied entirely or during a critical stage of the proceeding.") (citing, *inter alia, Geders*).

**6.** *Perry*, 488 U.S. at 284, 109 S.Ct. 594. In contrast, the *Perry* Court held, "in a short recess in which it is appropriate to presume that *nothing but* the testimony will be discussed, the testifying defendant does not have a constitutional right to advice." 488 U.S. at 284, 109 S.Ct. 594 (upholding prohibition on communication during a fifteen-minute break in defendant's testimony) (emphasis added).

**7.** *See Geders*, 425 U.S. at 87, 96 S.Ct. 1330.

**8.** *See id.* at 90–91, 96 S.Ct. 1330.

court's order." [9]  As the Court explained, "deprivation of counsel's assistance is presumptively prejudicial and, this right being transcendent, inherently constitutes plain error." [10]

The government argues, and appellant elects not to dispute, that the order in this case was narrower than the flat prohibition in *Geders* and *Perry* because—understood in context—the judge's instruction "not to speak to anyone" forbade only discussion of appellant's testimony. Even if that is so, the order still "went further than the law permits." [11]  *Jackson* expressly held that an order "limited to discussion of testimony ... would not survive constitutional challenge," because the defendant "had the right to discuss the entire case, including his own testimony, with his attorney." [12]  Contrary to the government's position, this holding remains valid and binding precedent in this jurisdiction with respect to overnight recesses. The Supreme Court's subsequent statement in *Perry* that a defendant has no Sixth Amendment right to discuss his ongoing testimony with his attorney during a short recess "does not end the inquiry. For as *Perry* recognizes, the defendant does have a constitutionally protected right to discuss a 'variety of trial-related matters' during a substantial recess that 'will *inevitably* include some consideration of the defendant's ongoing testimony.' "[13]  In-

9.  420 A.2d at 1205. The sequestration order in *Jackson* covered a lunch break following the defendant's direct examination rather than an overnight recess, but the Court reasoned that an order barring the defendant from conferring with his lawyer violates the Sixth Amendment regardless of the brevity of the order's duration. *Id.* at 1204. This aspect of the Court's reasoning, which has been superseded by *Perry*, is not implicated in the present appeal.

10.  *Id.* The government suggests that *Jackson's* plain error analysis is faulty because the Court did not consider whether the error "seriously affect[ed] the fairness, integrity, or public reputation" of the proceedings. *See Johnson v. United States*, 520 U.S. 461, 469–70, 117 S.Ct. 1544, 137 L.Ed.2d 718 (1997); *Thomas v. United States*, 914 A.2d 1, 22 (D.C. 2006). We disagree. In finding plain error, the *Jackson* Court cited *Watts v. United States*, 362 A.2d 706 (D.C.1976) (en banc), and we are confident the judges in *Jackson* were well aware of *Watts's* enjoinder that under the plain error standard, "the error complained of must be so clearly prejudicial to substantial rights as to jeopardize the very fairness and integrity of the trial." 362 A.2d at 709. Even if the issue were open for our reconsideration, we would be hard-pressed to disagree with *Jackson's* conclusion, for the Supreme Court has stated repeatedly that "a trial is unfair if the accused is denied counsel at a critical stage of his trial." *United States v. Cronic*, 466 U.S. 648, 659, 104 S.Ct. 2039, 80 L.Ed.2d

657 (1984) (citing, *inter alia, Geders* ). *See also, e.g., Mickens v. Taylor*, 535 U.S. 162, 166, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002) ("[W]here assistance of counsel has been denied entirely or during a critical stage of the proceeding ..., the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary.") (citing, *inter alia, Geders*).

11.  *United States v. Santos*, 201 F.3d 953, 965 (7th Cir.2000).

12.  *Jackson*, 420 A.2d at 1205 ("assuming" that the challenged order was so limited).

13.  *United States v. Triumph Capital Group, Inc.*, 487 F.3d 124, 132 (2d Cir.2007) (quoting *Perry*, 488 U.S. at 284, 109 S.Ct. 594). *See, e.g., Geders*, 425 U.S. at 88, 96 S.Ct. 1330 ("The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events."); *United States v. Sandoval–Mendoza*, 472 F.3d 645, 651 (9th Cir.2006) ("[I]t is hard to see how a defendant's lawyer could ask him for the name of a witness who could corroborate his testimony or advise him to change his plea after disastrous testimony, subjects *Perry* expressly says a defendant has a right to discuss with his lawyer during an overnight recess,

deed, "all of the federal circuit courts that have considered the issue have concluded that under *Perry* and *Geders* a district court may not order a defendant to refrain from discussing his ongoing testimony with counsel during an overnight recess, even if all other communication is allowed."[14]

The government also argues that "[t]o show a 'deprivation' of his [S]ixth [A]mendment rights, a defendant must ... demonstrate that he wanted to meet with counsel, but was prevented from doing so by the court's instruction."[15] In this case, the government contends, because appellant and his counsel did not object to the sequestration order or otherwise express a desire to confer, there is no evidence in the record affirmatively showing that appellant "actually wished to consult counsel" over the weekend recess.[16] Appellant therefore "cannot show that the challenged order actually deprived him of counsel," the government concludes, and so "he cannot establish error."[17]

In an important respect, the government frames the issue incorrectly. The order

barring appellant from conferring with his attorney during the weekend recess was erroneous. After *Geders, Perry,* and *Jackson,* that is beyond dispute. The order denied appellant his Sixth Amendment right. What the government really means to say is that we should presume the constitutional error was innocuous in the absence of evidence affirmatively showing that appellant actually wanted to confer with his attorney (or vice versa). The government concedes that if appellant was deprived of a right to counsel he wanted to exercise, he need not show how that deprivation prejudiced him. But the government argues that no such deprivation is shown on the record before us.[18]

We reject the government's argument. As the government admits, in *Jackson* this Court found plain error requiring reversal on a record devoid of evidence that appellant "actually" wanted to exercise his Sixth Amendment rights. The government asserts that the need for such evidence was not argued to the Court in that case, which may be true.[19] But even if the govern-

---

without discussing the testimony itself."); *Santos,* 201 F.3d at 965 (explaining that a prohibition on discussion of testimony "would as a practical matter preclude the assistance of counsel across a range of legitimate legal and tactical questions, such as warning the defendant not to mention excluded evidence"); *United States v. Cobb,* 905 F.2d 784, 792 (4th Cir.1990) ("To remove from [a defendant] the ability to discuss with his attorney any aspect of his ongoing testimony [would] effectively eviscerate[ ] his ability to discuss and plan trial strategy."); *Mudd v. United States,* 255 U.S.App. D.C. 78, 81, 798 F.2d 1509, 1512 (1986) ("Consultations between lawyers and clients cannot be neatly divided into discussions about 'testimony' and those about 'other' matters.").

**14.** *Triumph Capital Group,* 487 F.3d at 132.

**15.** *Bailey v. Redman,* 657 F.2d 21, 24 (3d Cir.1981). *See also Crutchfield v. Wainwright,*

803 F.2d 1103, 1109 (11th Cir.1986) (en banc) ("[A] defendant or the defendant's counsel must indicate, on the record, a desire to confer in order to preserve a deprivation of assistance of counsel claim.").

**16.** Brief for Appellee at 30.

**17.** *Id.*

**18.** *See Bailey,* 657 F.2d at 24 (distinguishing "between the 'deprivation' of a right and the 'prejudice' that may result therefrom").

**19.** On the other hand, the dissenters in *Jackson* argued that a sequestration order may be deemed harmless absent "a good faith objection[, which] presumes a need to converse." 420 A.2d at 1208 (Nebeker, J., dissenting). The majority of the Court rejected that position, declaring that the appellant was not obliged "to show how and to what extent he was prejudiced." *Id.* at 1204–05 (quoting

ment's argument is not foreclosed by *Jackson*, we think it is flawed. In essence, the government is arguing that appellant waived his Sixth Amendment right to the assistance of counsel by his failure to assert it—in other words, by his silence—when the trial judge erroneously undertook to curtail his exercise of the right.[20] But "a valid waiver [of Sixth Amendment rights] cannot be presumed from a silent record."[21] For a waiver of the right to counsel to be valid, it must be "an intentional relinquishment or abandonment of a known right or privilege."[22] As the Supreme Court has emphasized, "the right to counsel does not depend upon a request by the defendant, and ... courts indulge in every reasonable presumption *against* waiver."[23] Thus, the burden is on the government to establish a valid waiver in this case, not on appellant to disprove it.

The government has not carried that burden in this case. The basic defect in its position is that the requisite knowledge and intent to support a finding of waiver cannot be inferred from the mere fact that appellant and defense counsel failed to object to the court's sequestration order. As noted above, sequestration orders are appropriate when directed at ordinary witnesses; for aught that appears in the record, appellant and counsel (like the judge and the prosecutor) mistakenly believed them to be appropriate when directed at testifying defendants too. Ignorance of one's rights is not to be equated with a valid waiver.[24]

Absent a valid waiver, which we cannot find here, the point of the plain error rule is that some errors are so egregious that an appellate court will grant relief despite the lack of an objection. *Jackson* is binding precedent in this jurisdiction that the sequestration order in this case was plain error. It entitles appellant to a new trial.

### III.

Appellant raises two other issues, one of which we address briefly because it may arise again in a retrial.[25] Appellant sought to present testimony that when he was apprehended after his encounter with Officer Dykman, he asked the arresting officer, "Why'd that man shoot at us?" The trial judge ruled that this inquiry was inadmissible hearsay: although it was phrased as a question, the judge reasoned, in reality it was an implicit assertion of fact. Appellant argues his question was not hearsay and was admissible to show he

---

*Thompson v. Atlantic Bldg. Corp.*, 107 A.2d 784, 785 (D.C.1954)).

**20.** *See Mudd*, 255 U.S.App. D.C. at 81, 798 F.2d at 1512 ("Some courts have held ... that a defendant waives his right if no timely objection is made.") (citing, *inter alia, Bailey v. Redman*, 657 F.2d at 24).

**21.** *Thomas v. United States*, 914 A.2d 1, 19 (D.C.2006).

**22.** *Johnson v. Zerbst*, 304 U.S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938).

**23.** *Brewer v. Williams*, 430 U.S. 387, 404, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977) (emphasis added; citations omitted).

**24.** *See Moran v. Burbine*, 475 U.S. 412, 421, 106 S.Ct. 1135, 89 L.Ed.2d 410 (1986) ("[A] waiver must have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it.").

**25.** The issue we need not address concerns the admission in evidence of a statement Hawkins made to the police following his arrest. The statement was offered and admitted only against Hawkins; the judge instructed the jury not to consider it against appellant. Appellant argues that admission of the statement violated his rights under *Bruton v. United States*, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), and *Carpenter v. United States*, 430 A.2d 496 (D.C.1981) (en banc). The issue will not arise in a new trial, howev-

did not know Dykman was a police officer.[26]

The issue, which we presume may arise again on remand, turns on appellant's intention when he asked the question. "Hearsay" is any out-of-court statement "offered in evidence to prove the truth of the matter asserted."[27] A "statement," in turn, "is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion."[28] "In determining what is an assertion, the crucial distinction ... is between intentional and unintentional messages, regardless of whether they are express or implied."[29] "[N]othing is an assertion unless [it is] *intended* to be one."[30] An unintentional message is "not generally excludable under the hearsay rule," because the declarant's truthfulness "is not considered to be an issue" if the declarant does not intend to be asserting a fact.[31]

Questions usually are intended to acquire information, not to impart it. Thus questions usually cannot be characterized as intentional assertions and hence are not hearsay.[32] But that is not invari-

ably so. Some questions are intended as implied assertions and not as genuine requests for information. For example, in *United States v. Summers*,[33] the Tenth Circuit found a non-testifying witness's question to the police—"How did you guys find us so fast?"—was meant as "an inculpatory assertion .... intimat[ing] both guilt and wonderment at the ability of the police to apprehend the perpetrators of the crime so quickly."[34] "It begs credulity," the court said, "to assume that in positing the question [the witness] was exclusively interested in modern methods of law enforcement, including surveillance, communication, and coordination."[35]

The parties did not focus in the trial court on appellant's intent when he asked "Why'd that man shoot at us?" Different inferences are possible: appellant sincerely may have been wondering why Dykman shot at him and Hawkins, or he may have been intending to convey his innocence to the arresting officer. The judge did not make a factual finding on the issue of appellant's intent. In a new trial, the burden of showing that he meant to assert a

er, because—appellant's brief informs us— Hawkins is now deceased.

**26.** In the trial court, appellant also claimed unsuccessfully that his question, if deemed to be hearsay, was admissible under the excited utterance exception. On appeal, however, appellant does not argue that any hearsay exception applies.

**27.** *Puma v. Sullivan*, 746 A.2d 871, 875 (D.C. 2000) (quoting Fed.R.Evid. 801(c)).

**28.** *Little v. United States*, 613 A.2d 880, 882 (D.C.1992) (quoting Fed.R.Evid. 801(a)).

**29.** *Id.* (quoting *Burgess v. United States*, 608 A.2d 733, 740 (D.C.1992)).

**30.** *United States v. Long*, 284 U.S.App. D.C. 405, 412, 905 F.2d 1572, 1579 (1990) (quoting Fed.R.Evid. 801 advisory committee note).

**31.** *Little*, 613 A.2d at 882 (quoting *Burgess*, 608 A.2d at 740). "When a declarant does not intend to communicate anything ..., his sincerity is not in question and the need for cross-examination is sharply diminished." *Long*, 284 U.S.App.D.C. at 413, 905 F.2d at 1580.

**32.** *See, e.g., United States v. Wright*, 343 F.3d 849, 865 (6th Cir.2003) ("[A] question is typically not hearsay because it does not assert the truth or falsity of a fact. A question merely seeks answers and usually has no factual content.") (citing cases); *accord, United States v. Thomas*, 453 F.3d 838, 845 (7th Cir.2006); *Long*, 284 U.S.App.D.C. at 413, 905 F.2d at 1580.

**33.** 414 F.3d 1287 (10th Cir.2005).

**34.** *Id.* at 1300.

**35.** *Id.*

fact (his innocence) rather than to obtain information will be on the government.[36]

*Reversed and remanded.*

---

36. *See id.* ("[I]t is the party challenging admission of the declaration that bears the burden of demonstrating the declarant's requisite intent."); *see also* Fed.R.Evid. 801 advisory committee's note ("The rule is so worded as to place the burden upon the party claiming that the intention existed; ambiguous and doubtful cases will be resolved against him and in favor of admissibility.").