*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters.  Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

# DISTRICT OF COLUMBIA COURT OF APPEALS

No. 22-CM-0642

JEFFREY HAMILTON PETTY, APPELLANT,

v.

UNITED STATES, APPELLEE.

On Appeal from the Superior Court
of the District of Columbia
(2020-DVM-000680)

(Hon. Kimberley Knowles, Trial Judge)

(Argued November 8, 2023                    Decided June 20, 2024)

*Russell A. Bikoff* for appellant.

*Anne Y. Park*, Assistant United States Attorney, with whom *Matthew M. Graves*, United States Attorney, and *Chrisellen R. Kolb* and *Elizabeth H. Danello*, Assistant United States Attorneys, were on the brief, for appellee.

Before EASTERLY and MCLEESE, *Associate Judges*, and THOMPSON, *Senior Judge*.

Opinion for the court PER CURIAM.

Opinion concurring in the judgment by *Associate Judge* EASTERLY at page 2.

Opinion concurring in the judgment by *Associate Judge* MCLEESE at page 28.

Dissenting opinion by *Senior Judge* THOMPSON at page 38.

PER CURIAM: Appellant Jeffrey Hamilton Petty appeals his conviction for misdemeanor assault, arguing that the trial court violated Mr. Petty's constitutional right to the assistance of counsel. For the reasons stated in the opinions concurring in the judgment, the court vacates Mr. Petty's conviction and remands the case for further proceedings.

*So ordered.*

EASTERLY, *Associate Judge*, concurring in the judgment: The Supreme Court and our court have firmly established that "an order prohibiting a defendant from conferring with his counsel during an overnight (or other significant) interruption of his testimony is a denial of the defendant's Sixth Amendment right to counsel that requires reversal without any showing of prejudice." *Martin v. United States*, 991 A.2d 791, 793 (D.C. 2010) (citing *Geders v. United States*, 425 U.S. 80, 91 (1976) and *Perry v. Leeke*, 488 U.S. 272, 278-80 (1989)). In Mr. Petty's case, the trial court prohibited him from conferring with his attorney about his testimony during a nineteen-and-a-half-hour overnight recess in the midst of his trial. Mr. Petty argues the trial court's order violated his Sixth Amendment right to counsel and entitles him to reversal of his conviction for simple assault. The government agrees that the trial court's overnight communication ban violated Mr. Petty's Sixth Amendment rights. But the government contends that, because the trial court only barred Mr. Petty from

discussing his testimony with counsel and granted counsel a recess the next day to speak with Mr. Petty, we should dismiss this violation as "trivial" and affirm.

My concurring colleague and I agree that the government's argument is not consistent with this court's decision in *Martin* and that reversal is thus required. I write separately to make clear that the government's triviality argument is irreconcilable not only with *Martin* but also with the Supreme Court's decisions in *Geders* and *Perry* and this court's decision in *Jackson v. United States*, 420 A.2d 1202 (D.C. 1979) (en banc). In addition, even if we were to write on a clean slate, the government's argument would be unpersuasive. Requiring a showing of prejudice when a defendant is banned from consulting with his attorney, as the government effectively argues, would infringe on attorney-client privilege, erode the fundamental right to counsel, and undermine structural error precedent.

## I.     Factual and Procedural Background

After a dispute with a family member, Mr. Petty was charged with one count of simple assault in violation of D.C. Code § 22-404. On the second day of his bench trial, Mr. Petty took the stand. The government did not complete its cross-examination before the end of the day. Before adjourning, the trial court instructed Mr. Petty: "Do not discuss your testimony, including with your attorney[]." Mr. Petty immediately asked for clarification. The trial court responded "you are

not permitted to talk to your attorney, to any attorney, your attorney, the Government attorney, no one . . . I'm telling you not to discuss your testimony." Defense counsel (Colin M. Dunham) then objected, stating "I do believe that my client has the right to discuss the case with me." The court was unmoved and again stated that Mr. Petty "can't discuss his testimony . . . . You want to talk about the strategy for your case? Absolutely. I'm not saying don't discuss the case, [just] not his testimony." Counsel told the court he would research this issue overnight.

At the start of court the next day, defense counsel renewed his objection. Counsel argued that he "believe[d] [a defendant's] testimony is permitted to be discussed under the case law that we have," and the trial court's order to the contrary had violated Mr. Petty's right to counsel under the Sixth Amendment. Counsel further stated that he had been unsure about the scope of the trial court's order and thus had been "chilled as to what [he] could discuss" with Mr. Petty. Counsel specified that the order had deterred him from discussing the case with his client in various ways, including discussing Mr. Petty's testimony as part of conducting a model redirect examination, explaining how his answers to the prosecutor's cross-examination questions fit into the government's theory of the case and why redirect would be helpful, and discussing areas in which Mr. Petty had been confused by questions asked on cross-examination. Counsel also asserted that there were

additional topics he had wished to discuss with Mr. Petty but because of "attorney-client privilege," he would "have to remain silent" as to the details.

At this juncture, defense counsel asked the court to grant a two-hour recess so that he could meet with Mr. Petty before he resumed his testimony. The trial court noted that "the order of yesterday is done," resisted granting defense counsel a recess, and only acquiesced after the prosecutor indicated that the United States did not object. (Later the court stated that it had "not ma[de] a ruling" on the request but had "just granted" it "because there was no objection" from the government.) After the recess, the trial court asked defense counsel if he had had "an opportunity to speak with [his] client . . . in a way that [he had] wished." Defense counsel responded that he had, and Mr. Petty resumed his testimony.

At the close of trial, the trial court found Mr. Petty guilty of simple assault, largely crediting testimony from the government's witnesses and discrediting Mr. Petty's testimony. Mr. Petty timely appealed his conviction.

## II. Reversal Is Required Under The Supreme Court and This Court's Case Law

Reversal in this case is required under the Supreme Court's decisions in *Geders* and *Perry* and this court's decisions in *Jackson* as well as *Martin*.

In *Geders*, the Supreme Court explained that a trial court's order directing a defendant not to consult with his attorney during a seventeen-hour overnight recess in his trial violated his right to counsel under the Sixth Amendment. 425 U.S. at 91; U.S. Const. amend. VI ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."). Notably, the trial court in Mr. Geders' case told his counsel at the time it imposed the overnight communication ban that, after redirect on the next day, it would order a recess to give counsel "all the time [he] need[ed] to talk to [his client] about strategies or anything else"; and, true to its promise, on the day following the overnight ban, the court allowed counsel to talk to Mr. Geders at the lunch recess. 425 U.S. at 82-85, 83 n.1. Citing these facts, the government argued to the Supreme Court that Mr. Geders had not been prejudiced by the overnight ban. *See* Brief for the United States at 8-9, 23-25, *Geders*, 425 U.S. 80 (No. 74-5968), 1975 WL 173630. The Court, however, was unpersuaded.

The Court recognized that the Sixth Amendment guarantees more than a formalistic appointment of an attorney for trial; it provides a defendant with a full-bodied, functional right during trial to *talk* to one's lawyer about anything related to the case, to ask questions, and to get explanations and clear-eyed feedback (if not reassurance) about the progress of trial. The Court made plain both that "a sustained barrier to communication between a defendant and his lawyer," such as an overnight

ban on communication, violated that full-bodied functional right and that such violation was not amenable to a prejudice analysis. *Geders*, 425 U.S. at 91.

As the Court in *Geders* explained, overnight recesses are primetime for attorney-client communications:

> [i]t is common practice during such recesses for an accused and counsel to discuss the events of the day's trial. Such recesses are often times of intensive work, with tactical decisions to be made and strategies to be reviewed. The lawyer may need to obtain from his client information made relevant by the day's testimony, or he may need to pursue inquiry along lines not fully explored earlier. At the very least, the overnight recess during trial gives the defendant a chance to discuss with counsel the significance of the day's events. Our cases recognize that the role of counsel is important precisely because ordinarily a defendant is ill-equipped to understand and deal with the trial process without a lawyer's guidance.

*Id.* at 88. The Court specifically acknowledged concerns about lawyers improperly influencing their clients' testimony. *Id.* at 89. But it observed that prosecutors could expose such witness coaching on cross-examination and held that any conflict between such a concern and a "defendant's right to consult with his attorney during a long overnight recess in the trial . . . must, under the Sixth Amendment, be resolved in favor of the right to the assistance and guidance of counsel." *Id.* at 91. The Court further held that an "order preventing [Mr. Geders] from consulting [with] his counsel 'about anything' during a 17-hour overnight recess" required reversal,

implicitly recognizing that prejudice from a ban on overnight communication between a defendant and his attorney is inherent and yet unquantifiable. *Id*. at 86, 91-92 (reversing the Fifth Circuit's decision that Mr. Geders was not entitled to a new trial because he had not demonstrated prejudice from the Sixth Amendment violation); *see also id.* at 92 (Marshall, J., concurring) ("[A]s the Court holds, a defendant who claims that an order prohibiting communication with his lawyer impinges upon his Sixth Amendment right to counsel need not make a preliminary showing of prejudice.").

Subsequently, in *Perry*, the Supreme Court confirmed what had been implicit in *Geders*—that a Sixth Amendment violation resulting from an overnight ban on a defendant's communication with their counsel requires reversal without consideration of prejudice because of the importance of the right to counsel. 488 U.S. at 280. The Court reviewed a decision by the Fourth Circuit holding that a trial court's ruling prohibiting Mr. Perry from consulting with his counsel during a fifteen-minute recess during his testimony was a Sixth Amendment violation under *Geders* but that it did not require reversal because "the error was not prejudicial." *Id*. at 274-76. The Court rejected this reasoning but affirmed the result. Drawing an admittedly "thin" line between "the facts of *Geders*," where all communication between a defendant and his counsel had been banned during an overnight recess in the midst of the defendant's testimony, and "the facts of this case," the Court

concluded that the court order in Mr. Perry's case did not rise to the level of a Sixth Amendment violation. *Id.* at 280. The Court underscored that "[i]t is the defendant's right to unrestricted access to his lawyer for advice on a variety of trial-related matters that is controlling in the context of a long recess" as opposed to the "brief recess" at issue in *Perry*. *Id.* at 283-84. But the Court made clear that where a true *Geders* violation occurs, it requires reversal per se; the error "is not subject to . . . [a] prejudice analysis" because of the "fundamental importance of the criminal defendant's constitutional right to be represented by counsel." *Id.* at 279-80.

Following *Geders*, this court in *Jackson v. United States* held that an order directing a defendant not to discuss his testimony during a lunchtime recess did "not survive constitutional challenge" and was reversible error without regard to prejudice. 420 A.2d at 1205. Like the Supreme Court, this court emphasized that a per se approach is necessary because when a Sixth Amendment violation occurs, "the degree of prejudice suffered by the accused, and the impact on jury deliberations often cannot be assessed on the record." *Id.* at 1203.

And post *Perry*, in *Martin v. United States*, this court held that an unobjected-to order directing a defendant not to discuss his testimony with his counsel over a weekend recess violated the defendant's Sixth Amendment right to counsel, again without regard to prejudice, because "deprivation of counsel's assistance is

presumptively prejudicial." 991 A.2d at 794-95 (explaining that *Jackson* "remain[ed] valid and binding precedent in this jurisdiction with respect to overnight recesses" and where a *Geders* violation occurs, it "inherently constitutes plain error"); *accord Mudd v. United States*, 798 F.2d 1509, 1513 (D.C. Cir. 1986) (adopting a per se rule that "reversal is required" following a *Geders* violation as the approach that "best vindicates the right to the effective assistance of counsel"); *United States v. Johnson*, 267 F.3d 376, 379 (5th Cir. 2001) (explaining that, in *Perry*, the Supreme Court "held that a showing of prejudice is not an essential component of establishing a violation of the *Geders* rule" and expressing support for that view as "the constitutional right to counsel warrants the most zealous protection"); *Moore v. Purkett*, 275 F.3d 685, 689 (8th Cir. 2001) (explaining that a *Geders* violation is "reversible without a showing of prejudice"); *United States v. Miguel*, 111 F.3d 666, 673 (9th Cir. 1997) (noting that, where a *Geders* violation occurs, the violation constitutes "a denial of the assistance of counsel 'altogether' so as to require reversal with no showing of prejudice").

Although we did not say so explicitly, our opinions in *Jackson* and *Martin* recognized that *Geders* violations are "structural errors" that require reversal "without regard to their effect on the particular trial's outcome," *Fortune v. United States*, 59 A.3d 949, 956 (D.C. 2013), because they deny a defendant "certain basic, constitutional guarantees that should define the framework of any criminal trial,"

*Weaver v. Massachusetts*, 582 U.S. 286, 295 (2017); *accord United States v. Triumph Cap. Grp., Inc.*, 487 F.3d 124, 131 (2d Cir. 2007) (explaining that it is "well settled that, in the *Geders* context, a violation of a defendant's Sixth Amendment right to counsel . . . constitutes a structural defect which defies harmless error analysis and requires automatic reversal" (internal quotation marks omitted)); *Clark v. State*, 301 A.3d 241, 257, 271 (Md. 2023) (explaining that *Geders* violations are structural errors that require reversal when raised in post-conviction proceedings regardless of whether a defendant demonstrates prejudice).

Under this binding precedent, Mr. Petty received a constitutionally deficient trial and is entitled to reversal. In the midst of trial, the court initially told Mr. Petty that he was "not permitted to talk to [his] attorney" and then barred him from discussing "his testimony" with counsel for nineteen-and-a-half hours. Even this more limited overnight ban on attorney-client communications constitutes a *Geders* violation, "[f]or as *Perry* recognizes, the defendant [has] a constitutionally protected right to discuss a variety of trial-related matters during a substantial recess that will inevitably include some consideration of the defendant's ongoing testimony." *Martin*, 991 A.2d at 794 (emphasis and internal quotation marks omitted); *see also id.* at 795 (noting that the majority of the federal circuits agree that "under *Perry* and *Geders*" a trial court "may not order a defendant to refrain from discussing his ongoing testimony with counsel during an overnight recess, even if all other

communication is allowed" (internal quotation marks omitted)); *id*. at 794 n.13 (citing cases explaining why "[c]onsultations between lawyers and clients cannot be neatly divided into discussions about 'testimony' and those about 'other' matters" (internal quotation marks omitted)).

Moreover, Mr. Petty's counsel told the court that because of this overnight ban, he "was chilled as to what [he] could discuss with [his] client," and understandably so. It is far from clear what a ban on discussing "testimony"—which might impermissibly preclude counsel from explaining why the government had asked a defendant a question on cross examination, discussing the possibility of redirect, or relating how counsel perceived the strength of the government's case in light of a defendant's testimony—encompasses. In short, this is precisely the sort of lengthy, mid-trial deprivation of counsel that the Supreme Court, our court, and others have said is not amenable to "nice calculations as to the amount of prejudice arising from its denial" and requires reversal. *See Jackson*, 420 A.2d at 1203 (quoting *Glasser v. United States*, 315 U.S. 60, 76 (1942)); *see also United States v. Cronic*, 466 U.S. 648, 659 n.25 (1984) (citing *Geders* for the proposition that the Supreme Court has "uniformly found constitutional error without any showing of prejudice when counsel was . . . prevented from assisting the accused during a critical stage of the proceeding"); *Clark*, 301 A.3d at 254 ("*Geders* teaches that it is the length and scope of the no-communication order, not the defendant's request or

demonstrated desire for counsel, that determines whether there has been a violation of the defendant's Sixth Amendment right to counsel.").

### III.    The Government's Triviality Argument Must Be Rejected

Faced with this precedent, the government admits, as it must, that the trial court's order "violated [Mr. Petty's] Sixth Amendment right to counsel."  Br. for United States at 11.  But it nevertheless argues that we should assess the "totality of the circumstances" in Mr. Petty's case and conclude that, "at the end of the day," the order's effect "was so trivial that it did not amount to a constitutional violation."  Br. for United States at 11, 20, 23.  In other words, recognizing that an actual Sixth Amendment violation based on an overnight ban on attorney-client communication about a defendant's testimony cannot be deemed harmless under *Geders* and its progeny, the government tries to introduce a new way to minimize a *Geders* error and place it on the *Perry* side of the *Geders-Perry* divide.

As support for this argument, the government cites the Second Circuit's decision in *Triumph Capital Group*.  In *Triumph Capital*, the Second Circuit assessed whether a court order preventing a defendant from speaking with his counsel about his testimony during an overnight recess constituted a *Geders* violation where (1) defense counsel was informed the ban might be lifted less than thirty minutes after it was put in place, (2) defense counsel admitted that he could have contacted

the defendant (who was not detained) that evening and made arrangements to speak but did not do so, (3) the defendant was available to speak with counsel when counsel learned the ban would be lifted, (4) the court lifted the ban that evening and granted the defendant as much time as he wished to consult with his attorney during a recess the next day before resuming testimony, and (5) the trial court and the government did not act in "bad faith." 487 F.3d at 137. The Second Circuit recognized that an order forbidding a defendant from speaking about his ongoing testimony "during a substantial recess" violates the Sixth Amendment and that such errors "require[] automatic reversal." *Id.* at 131-32 (internal quotation marks omitted). But it announced that, to determine whether the trial court's order rose to the level of a *Geders* violation, it would consider the "totality of the circumstances." *Id.* at 134. The Second Circuit decided that, where the evidence shows a trial court order "is issued in good faith and does not actually prevent the defendant from communicating, unfettered, with his attorney about the full panoply of trial related issues prior to the trial resuming, nor meaningfully interferes with the quality of advice and counsel the attorney is able to provide during that recess," the erroneous

order could be deemed too "trivial" to amount to a Sixth Amendment violation. *Id.* at 135.[1]

The government argues that we should likewise assess the "totality of the circumstances" and, although the trial court's order in Mr. Petty's case did prevent him from speaking with his attorney about his testimony during a nineteen-and-a-half-hour overnight recess, we should nevertheless consider whether the surrounding circumstances rendered the trial court's order "trivial." This argument must be rejected both because it is contrary to binding precedent and because adopting this approach would be, for multiple reasons, ill-advised.

To begin with, setting aside that the government's reliance on *Triumph Capital* is misplaced,[2] the government's argument is squarely foreclosed by precedent that

---

[1] In addition to *Triumph Capital*, the government cites to *People v. Umali*, 888 N.E.2d 1046 (N.Y. 2008), and *People v. Tetro*, 109 N.Y.S.3d 776 (N.Y. App. Div. 2019). But these cases simply rely on *Triumph Capital* to conclude that where trial courts lifted bans on attorney-client communication and allowed clients time to speak with their attorney before resuming testimony, the bans did not violate defendants' Sixth Amendment rights. *Umali*, 888 N.E.2d at 1050-51 (concluding "these circumstances are comparable to the situation in . . . *Triumph Capital*" and, as a result, "reversal is not warranted in this case"); *Tetro*, 109 N.Y.S.3d at 780 (concluding that "reversal is not required under the circumstances of this case," citing *Umali* discussing *Triumph*). As I explain, *infra*, this reasoning is both foreclosed by our precedent and unpersuasive.

[2] As explained above, in *Triumph Capital*, the Second Circuit only looked to the totality of the circumstances because, "in the unusual circumstances presented" in that case, in which the trial court revoked its communications ban soon after

is binding on this court—precedent which gives us only two options when confronted with a trial court ruling barring communication between a defendant and their counsel. Such a ruling is either a *Geders* violation—requiring reversal, *Martin*, 991 A.2d at 793—or it is a de minimis interruption of a defendant's dialogue with counsel during trial and thus, per *Perry*, no constitutional violation at all, 488 U.S. at 284-85. As the government itself admits, the trial court's order in Mr. Petty's case fell on the *Geders* line of the divide, "violat[ing] his Sixth Amendment right to counsel." Br. for United States at 11; *see also Martin*, 991 A.2d at 794-95 (holding that an order forbidding a defendant from discussing their testimony with their attorney during an overnight recess violates the Sixth Amendment). Once a structural error of this nature occurs, it "infect[s] the entire trial process," *Brecht v. Abrahamson*, 507 U.S. 619, 630 (1993), and reversal is required, whether or not the error is preserved, regardless of any circumstances or steps the court took afterward, *Martin*, 991 A.2d at 793, 796 (explaining that a *Geders* violation "requires reversal

---

issuance, it was not clear whether the order actually rose to the level of a *Geders* violation. *Id.* at 135. There is no indication in *Triumph Capital* that the Second Circuit would apply this totality of the circumstances analysis to the facts of this case where the trial court's order undisputedly prevented Mr. Petty from speaking with his attorney about his testimony overnight, violating his Sixth Amendment rights. Indeed, there is every indication that the Second Circuit would not, given its acknowledgement that where a trial court in fact prevents a defendant from speaking with their attorney during an overnight recess, the order violates a defendant's Sixth Amendment rights, "defies harmless error analysis[,] and requires automatic reversal." 487 F.3d at 131.

without any showing of prejudice" under the test for plain error)[3]; *Jackson*, 420 A.2d at 1205 (concluding that, having established a *Geders* violation, an "appellant's conviction must be set aside regardless of whether prejudice was demonstrated" or appellant "remonstrate[d] against the court's order"); *Perry*, 488 U.S. at 280 (stating

---

[3] I disagree with my concurring colleague's suggestion that *Martin*'s "per se approach" to plain error might no longer be "good law." *Post* at 34 (McLeese, J., concurring) (internal quotation marks omitted). My colleague quotes the pronouncement in *Barrows v. United States*, 15 A.3d 673, 680 (D.C. 2011), quoting *Puckett v. United States*, 556 U.S. 129, 142 (2009), that "a per se approach to plain-error review is flawed." *Post* at 34 (McLeese, J., concurring). The Supreme Court in *Puckett*, however, was explaining in a nonstructural error case why a defendant must satisfy the fourth prong of the plain error test—that an error must "seriously affect[] the fairness, integrity, or public reputation of judicial proceedings." 556 U.S. at 135, 141-42 (internal quotation marks omitted). In *Barrows*, this court extended the reasoning in *Puckett* that a defendant must satisfy the fourth prong of the plain error test to the context of a brief courtroom closure. 15 A.3d at 680. But I find it hard to see how the logic in *Barrows* would undermine *Martin*'s approach to plain error where there is a *Geders* violation.

Even though a public trial violation is a type of structural error, the Supreme Court has recognized that "not every public-trial violation results in fundamental unfairness." *Weaver*, 582 U.S. at 298; *see also id.* at 296 (explaining that certain errors are classified as structural for different reasons, with different consequences). In the distinct structural error context in which "an indigent defendant is denied an attorney," however, the Court has explained that "the resulting trial is always a fundamentally unfair one." *Weaver*, 582 U.S. at 296; *accord Cronic*, 466 U.S. at 659 (explaining that "[t]he presumption that counsel's assistance is essential requires us to conclude that a trial is unfair if the accused is denied counsel at a critical stage of his trial"); *see also Clark*, 301 A.3d at 257, 261 (explaining that a *Geders* violation is a complete denial of counsel constituting structural error and noting that the Court's reasoning in *Weaver* "did not call 'into question the Court's precedents determining that certain errors are deemed structural and require reversal because they cause fundamental unfairness'" (quoting *Weaver*, 582 U.S. at 301)).

that a *Geders* violation "is not subject to [a] prejudice analysis"); *Geders*, 425 U.S. at 83-85, 91 (reversing defendant's conviction without pausing to consider the impact of the recess the trial court granted to permit the defendant to consult with his attorney the day after its overnight ban on communication).

What the government proposes—assessing whether the particulars of Mr. Petty's case somehow rendered "trivial" a clear Sixth Amendment violation—is indistinguishable from the harmless error analysis our court and the Supreme Court have held has no place following a *Geders* violation. *See Martin*, 991 A.2d at 793-94; *Perry*, 488 U.S. at 280. Assessments of whether a Sixth Amendment violation was "trivial" or harmless are, at bottom, assessments of the violation's adverse impact on the trial. *Compare Carrell v. United States*, 165 A.3d 314, 328 (D.C. 2017) (en banc) (explaining that a harmless-error analysis assesses whether we can say "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" (quoting *Sullivan v. Louisiana*, 508 U.S. 275, 279 (1993)), *with Triumph Cap. Grp.*, 487 F.3d at 134-35 (stating that a "triviality standard" analyzes whether "the actions of the [trial] court and the effect they had on the conduct of the trial deprived the defendant . . . of the protections conferred by the Sixth Amendment"). We do not require a defendant to show prejudice from a *Geders* violation precisely because the impact of that violation cannot be quantified. *See Jackson*, 420 A.2d at 1203 (observing that "[w]hen a violation of the right to

counsel is alleged, the degree of prejudice suffered by the accused, and the impact on jury deliberations often cannot be assessed on the record"). If the impact of a *Geders* violation cannot be assessed based on the record, there can be no reasonable way to determine whether that violation was somehow "trivial."

The factors the government urges us to consider to determine whether a *Geders* violation is trivial are unhelpful. The government argues that the impact of the trial court's order in this case was trivial because the court (1) limited the ban on communication to the discussion of Mr. Petty's testimony, (2) granted Mr. Petty and his counsel a two-hour break the next day to confer, and (3) received assurance from defense counsel that counsel had sufficient time to speak with Mr. Petty. But these factors are all constitutionally irrelevant. Whether a communication ban is limited to discussion of the defendant's testimony cannot make the error trivial because a "defendant [has] the right to discuss the entire case, including his own testimony, with his attorney." *Martin*, 991 A.2d at 794 (quoting *Jackson*, 420 A.2d at 1205). Whether the trial court subsequently granted Mr. Petty a recess to speak with his attorney makes no difference when the trial court had already committed per se reversible error by depriving Mr. Petty of the benefit of counsel overnight.[4] *See*

---

[4] My concurring colleague observes that Mr. Petty "arguably" forfeited his claim that he was entitled to a new trial when his counsel requested the two-hour recess before testimony resumed and suggests that plain error review of Mr. Petty's

claim might have been appropriate had the government requested it. *See post* at 28-31 (McLeese, J., concurring). Certainly I agree that the government, by failing to argue otherwise, has forfeited any argument of forfeiture by Mr. Petty. *See id.*; *see also Sims v. United States*, 213 A.3d 1260, 1267 n.11 (D.C. 2019) (referring to the government's failure to raise a lack of preservation argument as "waiv[ing] the waiver" (internal quotation marks omitted)); *but see Chew v. United States*, 314 A.3d 80, 91 (D.C. 2024) (Easterly, J., concurring) (explaining the difference between waiver and forfeiture). But I cannot agree that Mr. Petty forfeited any part of his *Geders* claim.

By objecting to the court's communication ban, Mr. Petty clearly preserved his Sixth Amendment claim, with its attendant new-trial remedy. Mr. Petty's counsel not only objected, repeatedly, to the trial court's order as a violation of his client's Sixth Amendment rights but also cited to multiple cases that make clear a *Geders* violation is not subject to a harmless-error inquiry and the only remedy is a new trial. *See Perry*, 488 U.S. at 280; *Mudd v. United States*, 798 F.2d 1509, 1513 (D.C. Cir. 1986); *see also Geders*, 425 U.S. at 91. As we have stressed in numerous cases, "[a]n objection is preserved . . . so long as it directed the mind of the court to the [correct] legal principle." *Evans v. United States*, 304 A.3d 211, 219 (D.C. 2023) (internal quotation marks omitted). Counsel gave the court sufficient information to put it on notice that a mistrial was compelled.

Moreover, my colleague's argument that a defendant forfeits the right to a new trial if they do not object both to the underlying error *and* any subsequent action by the trial court short of granting a new trial is out of place in the context of a structural error. *Cf. United States v. Cavallo*, 790 F.3d 1202, 1212-13, 1218 (11th Cir. 2015) (concluding that defendant preserved his objection to a *Geders* violation and was entitled a new trial where trial court instructed defendant that he "could not discuss his testimony with 'anyone,'" defendant objected, the trial court gave defendant additional time to review pertinent documents alone, and he did not object again). In the cases my colleague cites, *see post* at 28-29 (McLeese, J., concurring), we required defendants to object both to impermissible comments or evidence at trial and to the trial court's curative instruction because the trial court had discretion to fashion a remedy that would address any prejudice from the alleged error. *Lucas v. United States*, 20 A.3d 737, 744-45 (D.C. 2011) (explaining that defendant could not show any prejudice from the error "that was not cured by the trial judge's curative instruction"); *Long v. United States*, 910 A.2d 298, 305-06 (D.C. 2006) (rejecting defendant's argument that the trial judge's curative instruction "magnified rather than cured the [prosecutor's] impropriety" (internal quotation marks omitted)). In that context, a defendant must object to the curative instruction or

request a mistrial to make clear their position that the court's discretionary measure did not sufficiently address the underlying error's prejudicial effect. *See Lucas*, 20 A.3d at 744. Where a trial court commits a structural error of the sort at issue in this case, however, a defendant is entitled to a new trial "regardless of the error's actual 'effect on the outcome.'" *Weaver*, 582 U.S. at 299; *see also Clark*, 301 A.3d at 265-66 (explaining that, through *Geders* and *Perry*, the Supreme Court adopted a per se rule for *Geders* violations "because they 'pose such a fundamental threat to a fair trial that reversal of a conviction should be automatic'" (quoting *Perry*, 488 U.S. at 276)); *Moore*, 275 F.3d at 689 (reviewing a *Geders* violation raised on habeas and explaining that because a *Geders* violation "actually or constructively denie[s] the assistance of counsel altogether during trial court proceedings, the denial is reversible without a showing of prejudice"). A defendant need not separately request a mistrial after objecting to a structural error because the only permissible remedy is a new trial, absent a defendant's knowing, intelligent, and voluntary waiver of their rights. *See Martin*, 991 A.2d at 796. And there is no need to signal through an objection that a court's curative instruction or remedy was insufficient to address a trial error's prejudicial effect when the error, by definition, cannot be rendered harmless. *See Fortune*, 59 A.3d at 956.

My colleague's forfeiture argument is also difficult to square with this court's *Geders* caselaw in which we have said that even an *unobjected-to Geders* violation requires reversal and "inherently constitutes plain error" unless the government can show that a defendant intentionally and knowingly relinquished their right to confer with counsel. *Martin*, 991 A.2d at 794-96 (quoting *Jackson*, 420 A.2d at 1205). Deeming forfeited a defendant's right to a new trial where defense counsel objects to a *Geders* violation but does not also request a mistrial would seem to impose a higher burden on preserved *Geders* claims than on unpreserved ones.

Finally, I cannot agree with any suggestion by my concurring colleague that Mr. Petty "invited" an error by asking for a recess. *Post* at 29, 31 (McLeese, J., concurring). The invited error doctrine refers to courts' "reluctan[ce]" to address an error that a party has "induced the tribunal to take." *District of Columbia v. Wical Ltd. P'ship*, 630 A.2d 174, 183 (D.C. 1993). We have invoked the doctrine when, for example, a defendant agrees to a jury instruction during trial and then argues that instruction was erroneous on appeal. *See e.g.*, *Young v. United States*, 305 A.3d 402, 429-30 (D.C. 2023); *Masika v. United States*, 263 A.3d 1070, 1077 (D.C. 2021). Here, Mr. Petty did not induce the trial court to violate his Sixth Amendment rights, rather he strongly objected to the order. And by the time his counsel requested the recess, the error had already occurred and there was nothing—short of granting

*supra*. And whether defense counsel represents that they had sufficient time to speak with their client after a *Geders* violation is inconsequential as the right to counsel is a personal right that defense counsel cannot waive on their client's behalf.[5] *See Martin*, 991 A.2d at 796 (explaining that "[f]or a waiver of the right to counsel to be valid," a *defendant* must knowingly and voluntarily waive that right).

Binding precedent precludes us from entertaining the government's "triviality" argument. But, even if we were writing on a blank slate, such an analysis would be ill-advised because of the adverse consequences it would inevitably trigger.

First, assessing whether a Sixth Amendment violation was trivial "would create an unacceptable risk of infringing on the attorney-client privilege." *See Mudd*, 798 F.2d at 1513. Any serious attempt to discern whether other circumstances mitigated a *Geders* violation, such that the order did not "meaningfully interfere[] with the quality of advice and counsel the attorney [was] able to provide," *Triumph*

---

Mr. Petty a new trial—that could be done to fix it. The invited error doctrine has no application to this case.

[5] My concurring colleague's opinion also registers "some doubt as to whether relief is warranted in this appeal, given that defense counsel . . . gave the court an assurance as to the adequacy" of the recess granted by the trial court. *Post* at 37 (McLeese, J., concurring). The dissent similarly points to defense counsel's representations as evidence that the two-hour recess was "adequ[ate]" to protect Mr. Petty's right to counsel. *Post* at 43 (Thompson, J., dissenting). I fail to see how defense counsel's assurances are meaningful when only Mr. Petty could properly waive his Sixth Amendment right to counsel. *See Martin*, 991 A.2d at 796.

*Cap. Grp.*, 487 F.3d at 135, would require asking a defendant in the midst of trial "what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense." *See Mudd*, 798 F.2d at 1513. "Presumably the government would then be free to question defendant and counsel about the discussion that *did* take place, to see if defendant nevertheless received adequate assistance." *Id.* Such questioning is a significant intrusion into the attorney-client relationship at a particularly sensitive time and risks exacerbating the injury of the initial violation in the name of assessing whether the violation was somehow trivial. *Cf. id.* (rejecting any inquiry into prejudice from a *Geders* violation because it "would create an unacceptable risk of infringing on the attorney-client privilege" and embracing a "*per se* rule" as one that "best vindicates the right to the effective assistance of counsel").

Second, allowing an assessment of whether a *Geders* violation was somehow trivial would erode the fundamental right to counsel in a criminal proceeding. *Penson v. Ohio*, 488 U.S. 75, 84 (1988) ("We have long recognized that 'lawyers in criminal courts are necessities, not luxuries' [because] . . . it is through counsel that all other rights of the accused are protected.") (citing and quoting *Gideon v. Wainwright*, 372 U.S. 335, 344 (1963)). The fundamental nature of the right to counsel is precisely why courts have held that the deprivation of that right at a "critical stage" of a defendant's trial renders "a trial . . . unfair." *Cronic*, 466 U.S. at

659 & n.25. Allowing courts to deem trivial a violation of the right to counsel that we have said is inherently harmful would diminish this right. *See, e.g.*, *Jackson*, 420 A.2d at 1204-05 (rejecting a harmless error standard in the context of a *Geders* violation).

Third and relatedly, accepting the government's logic would introduce an end-run around our structural error precedent. We have held that certain errors are "structural" because they "affect[] the framework within which the trial proceeds," and, thus, necessarily require reversal. *Fortune*, 59 A.3d at 956 (quoting *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991)). Assessing whether completed, structural errors are nevertheless trivial would circumvent this precedent by downgrading structural errors after they occur. This approach would chip away at the brightline rules we have carefully drawn to protect fundamental constitutional rights.

## IV. The Dissent's Argument That There Was No Sixth Amendment Violation Is Wrong

Although the government admits that the trial court's order "violated [Mr. Petty's] Sixth Amendment right to counsel," Br. for United States at 11, my dissenting colleague takes the position that no Sixth Amendment violation occurred, and we may affirm Mr. Petty's conviction. *See Post* at 39-40 (Thompson, J., dissenting). This argument is incorrect for several reasons.

The dissent proposes that, because the trial court granted defense counsel a recess to talk with Mr. Petty before resuming testimony, it is "as if" the order violating Mr. Petty's rights "had never been entered," because "Mr. Petty's access to his counsel" was not denied, it was simply "delayed." *Id.* at 39-40, 42. Such logic requires shutting one's eyes to the nineteen-and-a-half-hours during which Mr. Petty faced a "sustained barrier to communication" with his counsel, *see Geders*, 425 U.S. at 91, and misses the point that it is exactly that extended "interfere[nce]" with attorney-client communications that the Supreme Court has prohibited, *Perry*, 488 U.S. at 280 (quoting *Strickland v. Washington*, 466 U.S. 668, 686 (1984)). *See also id*. at 283-84 (explaining that, "in the context of a long recess," "[i]t is the defendant's right to *unrestricted* access to his lawyer for advice on a variety of trial-related matters that is controlling" (emphasis added)).

The dissent's argument that no Sixth Amendment violation occurred given that Mr. Petty was granted a two-hour recess to speak with his counsel and "the record gives us no reason to think that the next-day consultation was any less effective" is also wrong because it hinges on a prejudice inquiry. *Post* at 44-45, 44 n.5 (Thompson, J., dissenting). The dissent's analysis compares the efficacy of attorney-client communication during an overnight recess with Mr. Petty's ability to speak with his attorney during the two-hour recess; in other words, the dissent assesses whether there is any harm from having the conversation later rather than

sooner (and assumes there is none). *See id.* at 44-46, 44 n.5 (explaining that prejudice "is the effect that restricting communication may have on the defendant's trial" (internal quotation marks omitted)). But such a prejudice inquiry is indisputably foreclosed by Supreme Court and our precedent. *See Perry*, 488 U.S. at 280 (stating that a *Geders* violation "is not subject to [a] prejudice analysis"); *Martin*, 991 A.2d at 793 (explaining that a *Geders* violation "requires reversal without any showing of prejudice"); *see also post* at 44 n.5 (Thompson, J., dissenting) (agreeing that an analysis of prejudice has "no place following a *Geders* violation").

Similarly, the dissent argues that, even if the trial court's order *did* violate Mr. Petty's Sixth Amendment rights, the two-hour recess the next day "cured" that violation. *Post* at 47-48 (Thompson, J., dissenting). But as my concurring colleague points out, there appears to be no daylight between an impermissible inquiry into whether a defendant was prejudiced by the court's order and an inquiry into whether a *Geders* violation has been "cured." *See post* at 37 (McLeese, J., concurring). The only way for a defendant to argue that a "curative" action was insufficient would be to argue that they were still prejudiced by the trial court's order, a position that is irreconcilable with precedent from our court and the Supreme Court. *See supra*. Moreover, the dissent has no support for the argument that the response to a completed structural error can be anything other than the grant of a new trial. Indeed,

the precedent the dissent cites to makes plain that the only permissible action following a completed Sixth Amendment violation "is a *new* trial." *Id.* at 47-48 (Thompson, J., dissenting) (quoting *United States v. (Joseph R.) Jackson*, 395 F.2d 615, 618 (D.C. Cir. 1968)). To be clear, granting a new trial does not "cure" the error in the previous trial. Rather, reversal of the conviction is the cure, and we allow a new trial following a reversal because the subsequent trial is not barred by the Double Jeopardy Clause. *See Tibbs v. Florida*, 457 U.S. 31, 39-40 (1982).

\*          \*          \*

The Supreme Court has already defined in *Perry* the only permissible exception to the *Geders* rule that a court order preventing a defendant from consulting with their attorney violates a defendant's right to counsel and requires reversal. The "thin" line between a brief interruption of attorney-client communications under *Perry* that does not violate the Sixth Amendment and a more substantial interruption under *Geders* may be difficult at times to discern, *see Perry*, 488 U.S. at 280, but not in Mr. Petty's case. The court order depriving Mr. Petty of the right to counsel for nineteen-and-a-half hours in the midst of trial puts the interruption of his communications with his lawyer squarely on the *Geders* line of the divide. *See Geders*, 425 U.S. at 89 (examining a seventeen-hour limit on attorney-client communication). Mr. Petty need not prove the gravity of this error;

we have already established that such an error is "presumptively prejudicial." *Martin*, 991 A.2d at 794 (quoting *Jackson*, 420 A.2d at 1205). We therefore cannot say that the violation of Mr. Petty's Sixth Amendment rights was "trivial," regardless of any measures the trial court may have taken after the fact. Because Mr. Petty's Sixth Amendment right to confer with his counsel during an overnight recess was violated, I agree that we must reverse Mr. Petty's conviction for a new trial.

MCLEESE, *Associate Judge*, concurring in the judgment: Mr. Petty argues that the trial court violated Mr. Petty's constitutional right to the assistance of counsel by ordering Mr. Petty not to consult with his defense attorney regarding his testimony during an overnight recess taken during a break in his trial testimony. I agree that the trial court's order was erroneous. *See Martin v. United States*, 991 A.2d 791, 793 (D.C. 2010) ("[A]n order prohibiting a defendant from conferring with . . . counsel during an overnight (or other significant) interruption of [the defendant's] testimony is a denial of the defendant's Sixth Amendment right to counsel . . . .").

Mr. Petty further argues that only a new trial can remedy that error. The latter argument was arguably forfeited, however, because Mr. Petty's counsel requested a different remedy during the trial and the trial court granted that remedy: a recess before any evidence was taken in which Mr. Petty and his counsel were free to discuss Mr. Petty's testimony. For example, in *Lucas v. United States*, 20 A.3d 737,

744-45 (D.C. 2011), this court applied the plain-error standard to a claim raised on appeal and held that reversal was required based on the prosecution's impermissible introduction of the defendant's post-arrest, pre-*Miranda* silence. In that case, the prosecutor questioned a police officer about the defendant's lack of reaction when the defendant was arrested; defense counsel objected; the trial court sustained the objection and granted the remedy requested by defense counsel, by giving a curative instruction, and defense counsel "did not ask for a mistrial or object that the corrective action taken by the court was insufficient." *Id.* at 744. *See also*, *e.g.*, *Young v. United States*, 305 A.3d 402, 430 (D.C. 2023) ("[T]he invited error doctrine precludes a party from asserting as error on appeal a course that [the party] . . . induced the trial court to take.") (brackets and internal quotation marks omitted); *Long v. United States*, 910 A.2d 298, 305 (D.C. 2006) (applying plain-error standard to claim on appeal that reversal was required to remedy impermissible prosecutorial closing argument, where trial court responded to contemporaneous objection by giving cautionary instruction and defense counsel did not object to curative instruction or request mistrial); *Battocchi v. Washington Hosp. Ctr.*, 581 A.2d 759, 769 (D.C. 1990) (by acquiescing in different remedy, appellants "waived" argument that "mistrial was the only adequate remedy").

In my view, the cited cases provide significant support for the idea that Mr. Petty forfeited his claim on appeal that the trial court's remedy in this case was inadequate and that a mistrial was required. The cited cases (among others) illustrate that this court has repeatedly applied the plain-error doctrine in cases where a party objected in the trial court, the trial court sustained that objection and granted some form of remedy, and the party argued for the first time on appeal that a different remedy, such as a mistrial, should have been granted.

Such cases reflect the core purpose of the plain-error rule: to encourage timely and specific objections in order "to alert the trial court and give it an opportunity to correct the error." *Chatmon v. United States*, 801 A.2d 92, 100 (D.C. 2002); *see also, e.g.*, *Austin v. United States*, 64 A.3d 413, 419 (D.C. 2013) ("To avoid plain error review, objections must be made with reasonable specificity; the trial court must be fairly apprised as to the question on which it is being asked to rule.") (brackets and internal quotation marks omitted). If the trial court sustains an objection and grants some form of remedy short of a mistrial, a party who believes that only a mistrial can remedy the problem is required to alert the trial court of that position. That way the trial court will be put on notice that the party believes that a mistrial is necessary, and the trial court can consider and rule upon the specific question whether a mistrial is necessary or other remedies would suffice. In the present case, Mr. Petty's

attorney did not argue to the trial court that the remedy the trial court provided was inadequate and that instead a mistrial had to be declared. To the contrary, Mr. Petty's attorney requested a remedy short of mistrial, was given that remedy, and assured the trial court that the remedy had turned out to be sufficient. The trial court therefore understandably did not rule on the question whether a mistrial was required.

In a footnote, the lead concurrence expresses the view that the well-settled rule that a party who wants a mistrial needs to ask the trial court for one rather than acquiescing in a different remedy "is out of place in the context of structural error." *Supra* at 20 n.4. The lead concurrence, however, cites no case that has so held.

In any event, the United States has not argued that Mr. Petty forfeited his claim, and this court normally does not consider arguments that the parties have not raised. *See, e.g.*, *Rose v. United States*, 629 A.2d 526, 535 (D.C. 1993) ("It is a basic principle of appellate jurisprudence that points not urged on appeal are deemed to be waived. That principle applies to the government no less than to the defendant in a criminal case. . . . Courts generally decline to consider arguments thus waived— even where the waived point might arguably have led to affirmance of a conviction.") (footnote omitted). I see no extraordinary circumstances that should lead this court to consider an issue of forfeiture that the United States did not raise.

The United States does argue that reversal is not required because the trial court's error was rendered "trivial" by Mr. Petty's opportunity to discuss his testimony with defense counsel during the recess the next morning before any further evidence was introduced. In support of that argument, the United States relies primarily on *United States v. Triumph Cap. Grp., Inc.*, 487 F.3d 124 (2d Cir. 2007). In that case, the trial court banned one of the defendants from discussing his testimony with defense counsel during an overnight recess in the middle of the cross-examination of that defendant. *Id.* at 127-28. Although the trial court rescinded that order approximately three hours later, defense counsel did not talk with the defendant that night. *Id.* at 128. According to defense counsel, doing so was not feasible by the time the order was rescinded. *Id.* The next morning, the trial court gave the defendant "as much time as he needed to discuss the case" with defense counsel. *Id.* Defense counsel nevertheless moved for a mistrial, arguing that a morning discussion would not be equivalent to a prompt discussion immediately after the trial recessed the night before. *Id.* at 128-29. The trial court denied the motion for a mistrial. *Id.* at 129.

On appeal, the Second Circuit held that, under the circumstances, the overnight ban was "trivial" and did "not amount to a constitutional violation." *Triumph*, 487 F.3d at 124, 134. In reaching that conclusion, the Second Circuit relied

on a number of circumstances of the case: the ban restricted only discussion of testimony rather than all communication; defense counsel was promptly informed that the ban might be lifted; the ban was lifted after three hours; defense counsel could have arranged to speak with the defendant the night the ban was lifted; the defendant was given as much time as he needed to speak with counsel the next morning; and there was no bad faith on the part of the prosecution or the trial court. *Id.* at 137.

In my view, the reasoning and outcome of *Triumph* are not consistent with our decision in *Martin*, 991 A.2d at 793-96. In *Martin*, the trial court banned Mr. Martin from discussing his testimony with defense counsel during a weekend recess in the middle of the cross-examination of Mr. Martin. 991 A.2d at 793-94. Mr. Martin's trial counsel did not object to the ban. *Id.* at 793. This court held that reversal was required notwithstanding the absence of an objection, the absence of specific evidence that Mr. Martin was prejudiced in any way, and the absence of evidence that Mr. Martin even wanted to speak with his counsel over the weekend. *Id.* at 793-96. We explained that "deprivation of counsel's assistance is presumptively prejudicial and, this right being transcendent, inherently constitutes plain error." *Id.* at 794 (internal quotation marks omitted).

I note that both the Supreme Court and this court have held that "a per se approach to plain-error review is flawed." *Barrows v. United States*, 15 A.3d 673, 680 (D.C. 2011) (quoting *Puckett v. United States*, 556 U.S. 129, 142 (2009) (internal quotation marks omitted)); *see also id.* (whether error seriously affects fairness, integrity, or public reputation of judicial proceedings for purposes of plain-error review must be determined "on a case-specific and fact-intensive basis") (quoting *Puckett*, 556 U.S. at 142 (internal quotation marks omitted)). Because the United States has not argued in this case that Mr. Petty's claim is subject to review under the plain-error standard or the invited-error standard, I have no occasion to decide whether the "per se plain error" approach reflected in *Martin* is good law. I do note, however, that *Weaver v. Massachusetts*, 582 U.S. 286, 296 (2017), cited by the lead concurrence (*supra* at 17 n.3), was clearly referring to the complete denial of counsel when it said that "if an indigent defendant is denied an attorney . . . , the resulting trial is always a fundamentally unfair one." *Id.* (citing *Gideon v. Wainwright*, 372 U.S. 335, 343-45 (1963) (Sixth Amendment right to counsel violated where defendant was tried without any assistance of counsel)). I do not view *Weaver* as establishing that even partial denials of the right to counsel require reversal per se under the plain-error standard.

Whatever its validity in cases in which a claim of error was not properly preserved in the trial court, *Martin* remains good law to the extent that it holds that impermissible bans on a defendant's discussions with defense counsel are presumed to be prejudicial, with no need for a case-specific demonstration of prejudice. 991 A.2d at 793-96. Although the court did not use the term in *Martin*, in essence the court held that such errors are "structural errors," which (when properly objected to at trial) are deemed "so intrinsically harmful as to require reversal without regard to their effect on the particular trial's outcome." *Fortune v. United States*, 59 A.3d 949, 956 (D.C. 2013) (internal quotation marks omitted).

I do not see how our holding in *Martin* can be squared with the Second Circuit's decision in *Triumph*. First, our decision in *Martin* to treat impermissible bans on a defendant's consultation with counsel as presumptively prejudicial and intrinsically harmful seems incompatible with *Triumph*'s conclusion that such errors can sometimes be deemed "trivial." Second, as previously noted, *Martin* applied the presumption of prejudice to an impermissible ban even though there was no case-specific evidence that Mr. Martin was prejudiced by the ban or even wished to speak to defense counsel during the period of the ban. 991 A.2d at 793-96. Although some efforts were made in *Triumph* to ameliorate the consequences of the impermissible ban, defense counsel in *Triumph* made case-specific representations that the

impermissible ban had nevertheless interfered with his ability to consult with the defendant. 487 F.3d at 128-29. The Second Circuit gave no reason to doubt those representations. *Id.* at 124-37. Under the reasoning of *Martin*, it seems to me that reversal was required in *Triumph.*

One could wonder whether applying a flat rule of "per se prejudice" to all impermissible bans on a defendant's consultation with defense counsel is overbroad, because it might be possible in at least some circumstances for a trial court to take adequate curative measures to ensure that in fact no such prejudice occurred. Whatever the merits of that line of thought as an original matter, however, I conclude that adopting such an approach would run afoul of our decision in *Martin* to apply a flat rule presuming such errors to be prejudicial and requiring reversal without a case-specific inquiry into prejudice. *Martin*, 991 A.2d at 793-96. For that reason, I do not think that a division of this court would be free to follow the two other decisions the United States relies upon as factually similar to this case. *See People v. Tetro*, 109 N.Y.S.3d 776, 780 (App. Div. 2019) (declining to reverse defendant's convictions, despite order initially banning defendant from discussing testimony with defense counsel during weekend recess, where trial court rescinded order later that same day; defendant and defense counsel were thereafter able to consult over weekend, although not in person; court provided defendant and defense counsel as

much time as they needed to further consult before trial resumed; and such consultation occurred); *People v. Umali*, 888 N.E.2d 1046, 1050-51 (N.Y. 2008) (declining to reverse defendant's conviction, despite order initially banning defendant from discussing testimony with defense counsel during four-day recess, where trial court rescinded order less than three hours after defense counsel objected; defendant and defense counsel had 2-1/2 days thereafter to consult; and "there was no indication that counsel believed additional consultation time was necessary").

The dissent concludes that decisions such as *Geders* and *Martin* can be read as limited to circumstances in which no adequate curative measures were taken at trial. *Infra* at 38-50. That position seems to me to have reasonable force. I ultimately am not persuaded, however, primarily because I have been unable to perceive a meaningful distinction between an inquiry into lack of prejudice, which is an inquiry that our cases foreclose, and an inquiry into whether there were adequate curative measures.

As an original matter, I have some doubt as to whether relief is warranted in this appeal, given that defense counsel specifically requested a remedy short of a mistrial, was granted that remedy, and gave the court an assurance as to the adequacy of the remedy. As I have explained, however, the United States has not argued that Mr. Petty's claim of error was not properly presented, and I do not believe that this

court should reach that issue sua sponte. Treating Mr. Petty's claim of error as properly preserved, I agree that our decision in *Martin* requires us to set aside Mr. Petty's conviction. I therefore concur in the judgment.

THOMPSON, *Senior Judge*, dissenting: In *Geders v. United States*, 425 U.S. 80 (1976), the Supreme Court held that a trial court order preventing the defendant "from consulting his counsel 'about anything' during a 17-hour overnight recess between his direct- and cross-examination impinged upon his" Sixth Amendment right to the assistance of counsel. *Id.* at 91. In *(Reginald A.) Jackson v. United States*, 420 A.2d 1202 (D.C. 1979) (en banc), our court concluded that because Mr. Jackson's right to counsel was violated by the trial court's order preventing consultation with his counsel, the "conviction must be set aside regardless of whether prejudice was demonstrated, and despite [the defendant's] failure to remonstrate against the court's order." *Id.* at 1205. We said that "reversal is required . . . when a defendant is deprived of counsel's guiding hand during a critical stage of the proceedings." *Id.* at 1203-04. And in *Martin v. United States*, 991 A.2d 791 (D.C. 2010), we reiterated that "an order prohibiting a defendant from conferring with . . . counsel during an overnight (or other significant) interruption of [the defendant's] testimony is a denial of the defendant's Sixth Amendment right to counsel." *Id.* at 793. We held that the trial court's order directing Mr. Martin "not

to speak to his attorney about his testimony over a weekend recess that interrupted his cross-examination . . . was plain error necessitating reversal." *Id.* at 792.

In the instant case, the court's initial order with which we are concerned (the "sequestration order"), issued when court adjourned for the day in the middle of Mr. Petty's testimony on cross-examination, prohibited Mr. Petty from discussing his testimony with defense counsel during an overnight recess. There can be no dispute that, left to stand, the sequestration order would have violated Mr. Petty's Sixth Amendment right to the assistance of counsel. But, importantly, the trial court rescinded its order after the parties came back on the record the following day—and did so before testimony resumed and before taking up any other business in the case—telling counsel to "have at it" (i.e. to discuss whatever counsel wished to discuss with Mr. Petty) during an almost-two-hour resumption of the overnight recess. After that resumption of the overnight recess (which the trial court aptly termed a "two-hour recess before we start"), Mr. Petty's trial counsel told the court that he had had an opportunity to speak with Mr. Petty in the way that he had wished, meaning in part that he was able to answer the questions that Mr. Petty had "wanted to talk to" counsel about on the previous evening.

In my view, on the facts of this case, the trial court's next-day rescission of its sequestration order had the effect of negating the sequestration order, making it as if

it had never been entered and averting a per se reversible Sixth Amendment violation.[1] The critical fact of this case, which the concurrences do not describe, is that between issuance of the sequestration order and the rescission of that order, the only trial proceedings that occurred were further discussion of the sequestration order that led the trial court to abandon it. Cross-examination of Mr. Petty did not resume before he and his counsel were able to speak (for about two hours) about his upcoming testimony and other matters; no other witness testified; and the court did not consider or decide any other matter, i.e., the court did not hear argument on any topic as to which trial counsel's arguments might have been informed by an opportunity to speak with Mr. Petty. These facts make this lengthy-recess case materially different from *Geders*, *(Reginald A.) Jackson*, and *Martin*.[2]

In *Geders*, the post-sequestration-order opportunity for the defendant and his counsel to consult did not occur until after the defendant had been required, on the

---

[1] *Cf. United States v. Triumph Cap. Grp., Inc*., 487 F.3d 124, 127, 128, 135, 136 (2d Cir. 2007) (holding that where the trial court rescinded its sequestration order after three hours and, on the following day, the defendant was given the time he needed to confer with his attorney before the day's testimony began [resuming the witness stand for cross-examination], the order did not "meaningfully interfere with [or violate] the defendant's Sixth Amendment rights to effective assistance of counsel.").

[2] In *Perry v. Leeke*, the Supreme Court held that the Constitution did not compel the trial judge to allow the defendant to consult with his lawyer during a 15-minute recess taken after the end of his direct testimony and before his cross-examination commenced. 488 U.S. 274, 284-85 (1989).

morning after the order was issued, to complete his reopened direct examination and undergo cross-examination, both without the benefit of having spoken with his counsel. *See* 425 U.S. at 83-84. In *Martin*, where the order precluded Martin from speaking to counsel from "past 4:45" pm on Friday until 10:30 on Monday, there were several trial developments before there was another break that might have provided an opportunity for consultation. Specifically, Martin completed his testimony, the defense called two more witnesses, the government presented a rebuttal witness, and a variety of important motions matters were argued or resolved (including, inter alia, a motion in limine to introduce Martin's co-defendant's interview statement to police that raised a *Bruton* issue, the government's motion to lead a rebuttal witness, Martin's motion for a mistrial, and Martin's opposition to a flight/concealment instruction), and the government rested. As Martin put it in the supplemental brief he filed on the *Geders* issue, the infringement of his Sixth Amendment right to counsel "happened at a critical time," just before "what turned out to be one of the most important days of trial."

In *(Reginald A.) Jackson*, the trial court order directed the defendant to "discuss nothing with anyone, not even [his] lawyer" during a luncheon recess after his lawyer had finished with his direct examination. 420 A.2d at 1202, 1203. Thus,

impliedly (the opinion doesn't specifically say), Mr. Jackson had no access to counsel before his cross-examination commenced and was completed.[3]

By contrast to *Geders*, *(Reginald A.) Jackson*, and *Martin*, in Mr. Petty's case, rescission of the July 12, 2022, sequestration order before any further trial proceedings ensued the next day meant that while Mr. Petty's access to his counsel was delayed, there effectively was no "sustained barrier to communication" with counsel, *Geders*, 425 U.S. at 91; there was no entire "prohibit[ion] . . . from conferring with . . . counsel during an overnight" recess, *Martin*, 991 A.2d at 792; and there was no complete "prevent[ion of the defendant's] consulting" counsel during the entirety of the lengthy break in the proceedings, *(Reginald A.) Jackson*, 420 A.2d at 1202. There was no "depriv[ation] of counsel's guiding hand during a critical stage of the proceedings," *id.* at 1204, and no "changing trial situation[]," *id.* at 1205, that ensued before Mr. Petty was able to consult with his counsel. "[A]t no point in the trial did [Mr. Petty] have to proceed without having an opportunity to receive the unrestrained advice and counsel of his attorney." *Triumph Cap.*, 487 F.3d

---

[3] *Cf. United States v. Cobb*, 905 F.2d 784, 786, 792-93 (4th Cir. 1990) (reversing Mr. Cobb's conviction where the trial court had ordered him not to discuss his ongoing testimony with anyone, including his attorney, during the weekend recess after court adjourned in the middle of the government's cross-examination of him, "effectively eviscerat[ing] his ability to discuss and plan strategy" regarding his ongoing testimony).

at 136. Effectively, the sequestration order prohibited communication only during the first several hours of the extended recess. I do not doubt that, as the Second Circuit observed in *Triumph Capital*, "most . . . 'overnight recess' consultations between a defendant and his counsel likely happen—and often reasonably can only happen—during the hours immediately following the recess of the trial." 487 F.3d at 133. But a next-day consultation *before the trial proceedings resumed* (with respect to anything other than discussion of the sequestration order itself) happened in this case, and we are not entitled to ignore that fact.

It is true that Mr. Petty and his counsel were afforded limited time (two hours) to speak before trial resumed, but two hours was the time requested by counsel based on his assessment of how much time Mr. Petty needed for understanding and guidance, and counsel confirmed after the two hours that the time had been sufficient. Counsel's assessment is of paramount importance, as it was "the function of counsel," and "not the function of the trial judge [and it is not this court's function] to decide . . . how much consultation between a defendant and [their] . . . counsel is necessary." *(Reginald A.) Jackson*, 420 A.2d at 1205 (internal quotation marks omitted). Moreover, the record provides no basis to question either the reasonableness of defense counsel's carefully explained request for additional time to consult, or the adequacy of the consultation between defense counsel and Mr. Petty during that time period.

In my view, for the foregoing reasons, our precedents do not compel us to reverse Mr. Petty's conviction. Surely our precedents do not mean that if the trial court had retracted its unlawful sequestration order very shortly after issuing it, reversal would still be mandated.[4] *Cf. Clark v. State*, 301 A.3d 241, 277 (Md. 2023) (observing that an objection to a lengthy no-communication order "if sustained, would cure the error"). What happened here is not different in any meaningful way because, again, once the sequestration order was lifted, Mr. Petty and his counsel were able to confer without restriction before the proceedings recommenced, and also because there is nothing sacrosanct about consultation during the early hours of a lengthy recess.[5] As Justice Marshall agreed in his dissenting opinion in *Perry v.*

---

[4] *Cf. United States v. Santos*, 201 F.3d 953, 966 (7th Cir. 2000) (observing that the approach of requiring reversal because of an order that flatly prohibited consultation between a criminal defendant and his lawyer during a substantial recess, even if the order was of limited duration, "is in some tension with the narrowing of the scope of automatic reversal in recent decisions by the Supreme Court").

[5] I want to be clear that I am not relying on what Judge McLeese calls a "case-specific inquiry into prejudice" of the type *Martin* eschewed, or on a prejudice analysis or harmless error analysis—an "assessment[] of the . . . adverse impact [of the sequestration order] on the trial"—that Judge Easterly rightly emphasizes has "no place following a *Geders* violation." But I do observe that the record gives us no reason to think that the next-day consultation was any less effective or productive than a consultation on the previous evening would have been. For all that can be known, the next-day consultation was more effective and productive than an evening one(s) would have been, because it took place after both counsel and client had the benefit of time to reflect on what had occurred during the previous day's proceedings.

*Leeke*, 488 U.S. 272 (1989), deprivation of access to counsel during an overnight recess "may entail a deprivation of little more than . . . fifteen minutes . . . because many attorneys will devote the vast majority of such an extended break to preparation for the next day of trial, while sending the client home to sleep, or back to jail." *Id.* at 294-295 (Marshall, J., dissenting) (internal quotation marks omitted). Moreover, we know from *Geders* that a defendant does not necessarily have a Sixth Amendment right to consult with his counsel at the particular moment or moments when he or counsel might prefer. *See* 425 U.S. at 90 (stating that if the trial judge believes that there is a high risk that defense counsel will not, during a trial recess, observe the ethical limits on guiding the defendant as a witness, the judge "may arrange the sequence of testimony so that direct- and cross-examination . . . will be completed without interruption"); *see also Perry,* 488 U.S. at 281 (a defendant "has no constitutional right to consult with [counsel] while he is testifying.").

---

I think I would join my colleagues in concluding that reversal is warranted if the record disclosed some reason why the opportunity for Mr. Petty to speak with his counsel before trial started again on July 13 was compromised in some way—if, for example, the record showed that counsel or client was not feeling well on July 13, or that the temperature in the witness room where Mr. Petty and his counsel conferred was uncomfortable; or if Mr. Petty's counsel had told the court, even with no elaboration or explanation, that the two hours had not been sufficient. So, I would not hold that an otherwise unconstitutional ban on attorney-defendant communication would *automatically* be cured by providing the defendant with substantial time to consult with his attorney immediately prior to resuming his testimony. But the record here discloses no circumstance such as I have posited.

In its decision in *Mudd v. United States*, 798 F.2d 1509 (D.C. Cir. 1986), the D.C. Circuit explained why a reversal without an inquiry into prejudice to the trial outcome is appropriate where the trial court has issued an sequestration order that prevents a defendant from consulting with his counsel during a lengthy trial recess. *See id.* at 1513. The D.C. Circuit reasoned that reversal only upon a showing of prejudice "would create an unacceptable risk of infringing on the attorney-client privilege" because "[t]he only way that a defendant could show prejudice would be to present evidence of what he and counsel discussed, what they were prevented from discussing, and how the order altered the preparation of his defense," matters about which the government would then presumably be free to question defendant. *Id.* Again, I do not suggest in derogation of such valid concerns that Mr. Petty should be required to show that he was prejudiced by the sequestration order. ("Prejudice," it should be noted, "is the effect that restricting communication may have on the defendant's trial";[6] here, an assessment of prejudice would entail assessing whether and how Mr. Petty's trial strategy was affected by the sequestration order.) Nor do I suggest that Mr. Petty should be required to prove that he wished to speak with his counsel while the sequestration order was in effect; indeed, although I agree with

---

[6] *Bailey v. Redman*, 657 F.2d 21, 24 (3d Cir. 1981) (noting the recognized distinction between an actual deprivation of the Sixth Amendment right to counsel (which is a "predicate to relief") and "the 'prejudice' that may result therefrom").

my colleagues that our cases foreclose requiring such proof, I accept that Mr. Petty *did* wish to speak with his counsel, because counsel told the court that Mr. Petty had questions he had "wanted to talk [about]" with counsel. My point is rather that rescission of a sequestration order, accompanied by an order affording time for consultation with counsel that is adequate according to counsel's assessment, negates or cures the sequestration order, such that, effectively, "no [S]ixth [A]mendment violation occurs." *Id.* at 1514; *see also Triumph Cap.*, 487 F.3d at 135. Stated differently, my point is that it is a trial court order "prohibiting all communication between defendant and counsel about the case during an overnight recess in a criminal trial, *without any curative action*, [that] result[s] in the actual denial of the assistance of counsel in violation of the Sixth Amendment." *Clark*, 301 A.3d at 279 (emphasis added).

It has been suggested that a *Geders/(Reginald A.) Jackson/Martin* violation cannot be cured, i.e., that while a new trial is permitted when there has been such a violation, the new trial does not function as a cure. I disagree because I believe binding precedent requires us to recognize that a presumptively prejudicial Sixth Amendment violation *can* be cured by granting the defendant a new trial at which no such order is entered. *See United States v. (Joseph R.) Jackson*, 395 F.2d 615, 617 (D.C. Cir. 1968). In (*Joseph R.) Jackson*, it came to light post-trial that the jury had not been the impartial jury guaranteed by the Sixth Amendment because of facts

about one of the jurors that caused the D.C. Circuit to presume that the juror lacked the requisite impartiality. *Id.* at 618. The court held that the "risk of prejudice as to this juror was such that *the only cure is a new trial*." *Id.* at 617 (emphasis added); *see also Martin*, 991 A.2d at 796 (holding that unlawful sequestration order "entitles appellant to a new trial"). Here, however, there is no need for the cure of a new trial because the error was cured mid-trial.

I see no reason why we should read the relevant precedents as requiring us to ignore the curative action that occurred here and as tying our hands in the way the two concurrences describe. Rather, while considering those precedents, we should be guided by the maxim not to be disregarded, that "general expressions, in every opinion, are to be taken in connection with the case in which those expressions are used. If they go beyond the case, they may be respected, but ought not to control the judgment in a subsequent suit when the very point is presented for decision." *Ark. Game & Fish Comm'n v. United States*, 568 U.S. 23, 35 (2012) (quoting *Cohens v. Virginia*, 19 U.S. (6 Wheat) 264, 399-400 (1821)).

In *Arkansas Game & Fish*, the Supreme Court construed a sentence in its prior opinion in *Sanguinetti v. United States*, 264 U.S. 146, 149 (1924), which stated in relevant part that "in order to create an enforceable liability against the Government [for a taking of flooded property], it is, at least, necessary that the overflow . . .

constitute an actual, permanent invasion of the land." 568 U.S. at 34-35. The Court declined to "extract from this statement [about the need for a "permanent invasion of the land"] a definitive rule that there can be no temporary taking caused by floods." *Id.* at 35. The Court instead "reject[ed] a categorical bar to temporary-flooding takings claims," *id.* at 36, explaining that "[t]he sentence in question was composed to summarize the flooding cases the Court had encountered up to that point, which had unexceptionally involved permanent, rather than temporary, government-induced flooding," *id.* at 35. The Court admonished that "[f]looding cases, like other takings cases, should be assessed with reference to the particular circumstances of each case." *Id.* at 37 (internal quotation marks omitted).

By analogy, I believe it is fair to say here that this court's statement in *Martin*, that a trial court order directing the defendant not to speak to his attorney about his testimony over a lengthy recess that interrupted his cross-examination "necessitat[es] reversal," 991 A.2d at 792, fairly reflected the sequestration cases our court had encountered up to that point, which had involved sequestration orders left to stand until testimony resumed. The statements in *Martin* and *(Reginald) Jackson* about "error necessitating reversal" should not be deemed a categorical bar to affirmance in this case, where the particular circumstance was the trial court's lifting of its sequestration order and allowance of time for Mr. Petty and his counsel to consult before testimony resumed. *See Kraft v. Kraft*, 155 A.2d 910, 913 (D.C. 1959)

("It is well to remember that significance is given to broad and general statements of law only by comparing the facts from which they arise with those facts to which they supposedly apply.").

In my view, the case law does not require the per se reversal the court has ordered. Therefore, and for all the foregoing reasons, I respectfully dissent.